## No. 761.

### John H. Sheen et al. vs. Robert Stothart et al.

The municipal authority of a town has a right to remove, or cause to be removed, any obstruction of the public streets.

Mere non-usage by the public of the soil forming part of a public street, will not prescribe against the right of the municipal corporation, and the public, to resume its use, and clear it of obstructions.

The dedication of property to public use may be established by any evidence which shows the intent of its owner to so dedicate it.

Whoever buys real estate within corporate limits, with reference to a certain plan which sets forth the public streets of a town, is estopped from denying the servitude imposed by those streets.

Damages can only be allowed by the decree dissolving an injunction, when the judgment which has been enjoined is for money.

APPEAL from the Seventeenth Judicial District Court, parish of Red River. *Pierson*, J.

*J. F. Pierson*, for plaintiffs and appellees.

*L. B. Watkins*, for defendants.

The opinion of the court was delivered by

Egan, J. The plaintiffs, claiming to be owners of certain lands in the town of Coushatta, sue the defendants for damages for throwing down their fences, and also enjoin them against further and apprehended repetition of the acts complained of. All of the parties were at the time residents of the town ; one of them town marshal, and the other two defendants property-holders as well as residents. The defense is, that plaintiffs were unlawfully obstructing streets and the use of streets necessary and useful to the public and to the defendants and their property, and that the removal had been ordered by the town authorities and was done in accordance with an ordinance so directing, which likewise made it highly penal for any one to obstruct or stop any of the streets of the

town ; that it was competent for the town authorities to direct and their marshal to carry out the removal of obstructions in the streets, and for that purpose to employ or obtain assistance, is too well settled and too necessary an exercise of the ordinary police powers of municipal government to be now questioned. 3 An. 563 ; 11 M. 620 ; 2 N. S. 317 ; 3 N. S. 140 ; same 293. To do so, therefore, is not to commit trespass or to authorize money demand of damages, unless the power is exercised in such violent manner and with such other acts, not here alleged, as would of themselves give rise to an action. Even the proprietor of the soil subject to the public use could not complain of its being kept for that purpose, and such complaint would be *damnum absque injuriâ.* 13 L. 111 ; 3 L. 563.

Every inhabitant of a town, and even the general public, is interested in keeping open and unobstructed to public use its streets and highways. Property owners are especially interested in so doing, and in procuring the enforcement of any ordinances provided for that purpose. In Daublin vs. Mayor of New Orleans, 1 M. 187, Judge Martin said: Streets are "*hors du commerce;*" they are the property of no one, not even of the corporation. "The use of them belongs to the whole world, and that by removing obstructions from them no possession was taken." He also maintained the right of the city authorities to pass ordinances for that purpose. In that case the plaintiff was renting a house which partially obstructed a street and the authorities sued him and had it pulled down and removed. This right has been too often exercised since to be now questioned. 4 An. 73; 20 An. 226; 3 An. 230 ; 22 An. 526. It is also well settled that once a dedication to public use has taken place, no silence or length of time or of non-user can deprive a public corporation of its power over public places. See same authorities, and 2 Dillon 531. •

Possession can not be pleaded against a public right, unless it has been immemorial. 3 N. S. 293. No person, not even the owner of the adjacent soil, and who may have a reversionary interest, has a right to obstruct a highway or public road or street. Such obstruction is a public nuisance, and may lawfully be removed or destroyed by the municipal authorities. 3 La. 563; 11 An. 620; 2 N. S. 317; 3 N. S. 140; same, 293.

Let us apply these well recognized principles to the facts of this case.

The town of Coushatta is regularly incorporated, with a mayor and council. It was laid off and properly sold and acquired according to a map made by one Armistead, parish surveyor, under authority of the police jury of the parish, in anticipation of the incorporation of the town. This map is deposited in the recorder's office, and is, and has been, ever since, recognized by the authorities and inhabitants as the

official map of the town, which is the parish seat of Red River parish. The plaintiffs have both bought and sold property according to this map, upon which appear the regular designation of lots and streets by name, as well as direction and dimensions, and the town has been built accordingly.

The property of plaintiffs was acquired from one Hammett, on the eighteenth of January, 1876, and is described as being in and near the town of Coushatta, and as comprising that portion of a certain designated tract east of Red river, " except the lots sold by W. W. Armistead, former tutor of the minor heirs of said Cowden, deceased, as of record and on file in the recorder's office of said parish and State, and being the same land purchased by said Hammett from T. R. Armistead, tutor, by notarial act passed before D. H. Hayes, notary public, on the seventh day of January, 1876, which latter title contains the same exceptions and references to former sales of lots by W. W. Armistead, former tutor. Several of these sales appear in the record, and refer directly to the Armistead map, and to the streets upon which they front by name. Among them are titles to lots purchased by two of these defendants, Gohagen and Brown, both of whose properties are in close proximity to that purchased subsequently by the plaintiffs, and the value of which, as well as the convenience of use, we think it is manifest from the evidence, will be materially impaired by the fact that, a few days after their purchase, the plaintiffs inclosed the whole of the land purchased by them with what their counsel calls boundary fences, and thereby obstructed the streets, the attempt to open which by the town marshal, assisted by the other defendants, is enjoined in this suit, and made the basis of the claim for damages.

There is no question that these streets appear in the Armistead map as extending through plaintiffs' property, and that they had been built upon in other portions and made use of over plaintiffs' property before they acquired it, and that they immediately proceeded to close these avenues by extending the fence which already inclosed a portion of the property acquired by them. It is, however, claimed by them that a few years before, and shortly after the town was established, the whole of this land was fenced in and cultivated. This, as we have seen, had it continued even longer, could not have interfered with the right of the town authorities to open the street at any time, and it appears they were subsequently opened, voluntarily or otherwise. The destination made by the owner is equivalent to title in regard to such servitudes as the streets and other public places of towns and cities. C. C. 767; 18 An. 560; 21 An. 244. No deed or act of conveyance is necessary. Same authorities. Long silence of owners and use by the public is evidence of dedication. The sale of lots, with reference to a plan or description upon which there

appear certain streets and avenues amounts to an immediate and irrevocable dedication of such streets and avenues to the public, and the vendees and the public generally have a right to their use to their full extent. 2 Dillon, 503; 8 R. 92; 9 An. 244; 15 An. 9. These principles were discussed and fully recognized by us in a late case decided at New Orleans of Burke vs. Wall, ante, p. 38. If, at the time of the purchase of property in a city or town, there existed in its favor an apparent right of servitude between that and other property, it continues to exist actively or passively upon or in favor of the property sold. 12 An. 108.

It is, however, argued on the part of the plaintiffs that the defendants acquired their title from a tutor, who had no power or right to create servitudes. The evidence satisfies us that the dedication took place before either plaintiffs or defendants acquired, and if it did not, both plaintiffs and defendants acquired from the same source, and the latter first, while the plaintiffs' acquisition was made, as we have seen, subject and with direct reference to the former sales to the defendants and other persons. It does not, therefore, lie in the mouths of plaintiffs to complain of the want of power or title in their common author to do what was done. Title in defendants was, however, not necessary.

Plaintiffs' counsel objected and excepted to the reception of evidence of title in this, which they claim to be a possessory action. No one is claiming either title or possession from them, nor seeking to acquire any possession, but only to remove obstructions placed by them in public streets of the town, in violation of the ordinances of the town and the rights and interests of others and of the public. The rules applicable to a possessory action do not, therefore, apply. The evidence was pertinent, and bore directly upon the issues, and was properly admitted, and so, in our opinion, should have been all evidence going to show dedication or use, and the existence and character of a map of the town, and the fact that sales had been made and buildings erected and streets laid off and used according to it.

It would, indeed, have been quite immaterial if the particular streets, the right to close or prevent the use of which is claimed on one side and denied on the other, had never before been used. If they appeared upon the plan of the town, and extending over the property in question, they might have been opened to their full limit at any time, and neither the former proprietor nor plaintiffs could have objected, and especially not the latter, who were themselves aware of the existence of the plan or map of Armistead, as one of them testified, and as is shown sufficiently by their residence in and acquisition and sale of property in the town.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed; that the demand of plaintiffs be rejected with costs of both courts, and that the defendants

recover against them and their surety on the injunction bond, G. W. Carlton, *in solido*, two hundred dollars damages as attorney's fees.

---

Plaintiffs and defendants have applied for a rehearing of this cause. Their application is granted.

## ON REHEARING.

The opinion of the court was delivered by

DeBLANC, J.   We have considered with care the elaborate and plausible printed argument submitted by plaintiffs' counsel in support of his application, and we have again examined, with the attention which should be expected from every court, and more particularly from one of last resort, the pleadings, the evidence, the original briefs, and the authorities in this case, and we remain convinced that, except on one point, our first decision conforms to the pleadings, the evidence, the law, and our jurisprudence.

One of the reasons urged by plaintiffs'.counsel to obtain a rehearing is that " damages can be allowed, in the decree dissolving an injunction, in only those cases in which the execution of a money judgment has been suspended by the writ." In this, according to our jurisprudence, he is right.

Were we called upon to establish a precedent, we would look in vain in the Code of Practice for a single provision postponing, as between the parties to the suit, a demand so germane, so connected with, and so eminently incidental to the main action.

As to the sureties on such bonds, the recourse against them should, we admit, be by a direct action on their obligations; for, so far as they are concerned, the action on the bond is independent from that brought by plaintiffs, but, as to the principals, the demand for damages against them, whenever and howsoever made, has but one character, one name; it is a reconventional demand, and it might, it seems, be urged and passed upon in the suit from which it springs.   C. P. 375.

However, an adverse construction has been sanctioned by a long list of decisions—perhaps disputable—but no longer disputed, and we are not inclined to now change a precedent which, for so many years, has stood in our reports as a guide to the bar, the bench, and litigants.

It is therefore ordered and adjudged that defendants' claim for damages be and the same is hereby disallowed, as in case of nonsuit, and their action on the injunction bond specially reserved.   It is further ordered that, as above amended, and in all other respects, our former decree remain undisturbed.