Statement of the Case.
NICHOLLS, J.
This suit was instituted in the Fourth Judicial District Court for the parish of Lincoln. Defendant, after filing an exception of no cause of action, which was overruled, answered. The case was then tried on the merits; the trial resulting in a judgment in favor of the plaintiffs against defendant, from which judgment he appealed to the Court of Appeal, First Circuit. Appellees answered the appeal, praying that the judgment appealed from he amended and made to conform to that prayer. The latter court sustained defendant’s exception of no cause of action, which had been overruled by the district court, and dismissed the suit. On plaintiffs’ application, the case has been brought up, and is now before us for review.
The suit was instituted by George M. Lo-max and 14 other plaintiffs, who alleged themselves to be “all residents of the Walnut Creek schoolhouse neighborhood, in Ward 3, Lincoln Parish.” They set out in their Xietition that the citizens and school xiatrons of said neighborhood had maintained a school building for the past 40 years or more, and, the school building originally having gone to decay, the Walnut Creek Baptist Church building was used for many years after-wards. That about the year 1890 the school patrons of said neighborhood, including petitionersi with private contributions and labor, built a schoolhouse on the lot owned and occupied by the Walnut Creek Baptist Church, in said ward and parish, with the verbal consent of the owners and trustees of said church, who gave them said lot free of charge, being themselves patrons of said school; said building having been erected for a neighborhood school building, and to enable the neighborhood to maintain and keep a private school for the children of the residents of said neighborhood. That said building was used regularly for school purposes, and was the dependence of the neighborhood for a school building, and belonged solely to the citizens of the neighborhood for school purposes; the parish or public school board having no interest therein. That said school was not incorporated, nor a legally organized body; nor had it a legally constituted board of trustees, or other individual or official head through which to carry on its business. That the school had been maintained all the-while as a private school for the education of the children of the neighborhood, with occasional short terms of public school, when and to the extent that public school funds were available, under informal regulations or provisions with the public school board of the parish, from which the said neighborhood school occasionally got the benefit of some of the public funds. That this school building erected, as before stated, in or about the year 1890, was a commodious and comfortable school house, ample for the needs of the neighborhood, and was equipped with the necessary furniture, seats, lights, etc., and was worth in June, 1902, at the time it was torn down and demolished as will be hereinafter stated, the sum of $400.
That in or about the month of June, 1902, William H. Phillips, a resident of Simsboro,. Lincoln parish, without right or authority, and with intent to break up and destroy the Walnut Creek school, and force the patrons of said school, against their will and wishes, to patronize the Simsboro school, did pull down and completely demolish the Walnut Greek schoolhouse, and remove a portion of the lumber with which it was built. This act of the said W. H. Phillips was done without the consent or permission of petitioners or any of the school patrons of the said Walnut Creek school neighborhood, and it was done- *853 over their protest, and it was a willful and malicious act on Phillips’ part, in total disregard of petitioners’ rights and interests, and, in consequence, petitioners, patrons and those ■having a general interest in maintaining said school in the said Walnut Creek school neighborhood, having been deprived of said schoolhouse, the said act of said Phillips had damaged petitioners $1,100, as follows: $200 from loss of the use of the building since its demolition, and the trouble, annoyance, and inconvenience resulting therefrom; $400, the value of the building, and $500 for the unlawful trespass of the said W. H. Phillips upon the said property, and for his unlawful and malicious act of tearing down said house and breaking up the said school, and as punitive damages. That the said Walnut Creek school had been and was still a necessity to the neighborhood, for the reason that it was centrally located, and convenient and accessible to all of its patrons, and, deprived of the Walnut Creek school, many of the edueable children of that neighborhood would ,be practically debarred of educational advantages, on -account of the remoteness of all other schools, and especially the school at Simsboro. That the maintenance of the said Walnut Creek school had been and was a necessity to the neighborhood, even though it had been done at a heavy expense to the patrons; the school being a private school, and maintained by the payment of tuition by the patrons most of the time. Hence the tearing down of this schoolhouse as aforesaid had damaged petitioners greatly, and in the amount above stated.
That they did not know whether or not any other person besides W. H. Phillips had anything to do with the tearing down of the schoolhouse, and desired, in abundance of caution, and did thereby, reserve their rights to make other defendants to this suit, or in a subsequent suit to sue them and recover damages in solido from any other person who might'have aided and assisted Phillips in said unlawful, malicious, and tortious act.
That W. H. Phillips be served with a copy of this petition and cited according to law, and upon trial thereof that there be judgment in favor of petitioners and against defendant, W. H. Phillips, for $700, with legal interest thereon from judicial demand, and also ordering and requiring Phillips to rebuild and reinstate said Walnut Creek schoolhouse, and replace all the furniture, fixtures, and equipment in just as good condition as it was when he tore the building down, and just as it was then.
They prayed further for all such orders and decrees as were necessary to repair the-damages as done as aforesaid, and to give them relief against the aforesaid unlawful, malicious, and tortious act of W. H. Phillips, and in the event W. H. Phillips refused or failed to replace the said building in compliance with the order of the court (say 30-days), or in the event the court did not order the building replaced, then and in that event petitioners prayed for further judgment against said Phillips for $400, the value of the building, with legal interest thereon from judicial demand, making the aggregate amount prayed for $1,100. They prayed for all other necessary orders and for general and equitable relief.
The defendant, after unsuccessfully pleading as we have said, an exception of no-cause of action, answered, pleading first the general issue. He then averred that he and certain other parties whom he named were-“trustees of the Simsboro school”; that by an election held for that purpose a regular-school district was created, of which Simsboro was about the center; that as soon as-this was done this defendant and the aforesaid members of the board of trustees of the Simsboro school had a meeting, and discussed the possibility of getting all the persons who patronized the school at Walnut Creek and the deacons of the Walnut Creek. Baptist Church to agree for the defendant *855 ■•and his associates to cause the schoolhouse of the grounds of the Walnut Creek Baptist ■church to be torn down, and the material ■of which it was built to be used in making some addition to the schoolhouse at Sims'boro, which was soon to pass under the control of the regular school board for the legally constituted Simsboro school district.
That a committee, consisting of himself, W. A. Burt, and R. B. Trussed, were appointed to see all persons who might be interested in the said schoolhouse at Walnut Creek Church, and get them to consent to the said schoolhouse being moved as aforesaid; i. e., they were to see all persons who would be made to lose and inconvenienced, .and who had put any money in said school 'building. He alleged that said committee did this, and he believed then, and still believed, and, so believing, averred, that such ■consent was obtained; and he alleged that the plaintiffs themselves agreed to it; G. M. Lomax stipulating that, while he was opposed to it, he would agree if a majority so ■desired, and W. R. Sims agreeing on condition that he should be paid $8 which he had' put into said building.
That all this was done in order to try to ■avoid, if possible, all dissatisfaction; but he now alleged that the plaintiffs in this case had no such claim or right to the schoolhouse which they alleged had been demolished, and had no such right last year, in •any manner, shape, or form, as would give them a cause of action to recover the value ■of the house, or for damages in any way whatever. The ownership vested in the deacons or trustees of the Walnut Creek Baptist Church for the use of said church, and, if any one could recover, it was only the said ■deacons or trustees, and they only for ben•efit of the church.
That the building complained about being moved had not, prior to the time it was torn ■down, been used as a schoolhouse for more •■than six years. That schools had occasionally been taught in the church. That, after obtaining consent of the neighborhood in regard to the little schoolhouse, W. A. Burt pulled the house down, or had .it done, and hauled one or two loads of the lumber to Simsboro; but, while he was so hauling, G. M. Lomax, who was the life and spirit and the instigator of this unjust suit, demanded of him to stop doing so; and defendant averred that Burt did so stop, and nothing further was done in regard to the matter. That, except participating in the meeting of the board of directors as heretofore stated, he had nothing .in the world to do with tearing the house down, or moving one single stick of the lumber. That neither he nor the parties aforesaid were, acting in any malice whatever, but were doing solely what they believed would inure to the benefit of the public school district aforesaid, and were actuated solely by motives causing them to do what they believed would be best, and had no idea at the time they determined to move the shoolhouse that any one would object seriously thereto; and especially they did not expect that G. M. Lomax, who had been regarded as a public-spirited citizen, would make any objection at all, while now he had really instigated this action, and had caused the name of Frank P. Madden to be inserted in the petition as one of the complainants in this case, without any authority whatever from Frank Madden to do so. That, if any liability attached to him by reason of what' had been done, then his eo-trustees were equally liable as he, and they should be made to come into this suit and assist defendant in his defense. That he therefore prayed that his co-trustees be cited to answer plaintiffs’ demand and assist him in the suit, and, contingently, should judgment be rendered against himself, there be also judgment rendered against them. He, .however, prayed that plaintiffs’ demand be rejected.
The district court rendered judgment in *857 favor of plaintiffs and against defendant, condemning the latter to restore and rebuild the house alleged in this suit to have been torn down and demolished as nearly as possible as it was when it was torn down, in every particular; same to be done within 90 days after the finality of this judgment. It further ordered, adjudged, and decreed that in the event defendant failed, neglected, or refused to comply with the above order of the court, by rebuilding and restoring said building as aforesaid, then and in that event plaintiffs were hereby given judgment against defendant for the sum of $150; all costs of this suit to be taxed against defendant. Defendant’s right to proceed against any and all persons who participated with defendant in tearing down or causing to be torn down and removed the aforesaid house is hereby reserved.
The district judge, in his reasons for judgment, stated:
“That the building which had been taken down had been built for educational purposes by contributions and labor of the citizens of the Walnut Creek neighborhood some 12 or 15 years before. That since it was built it had been used for school purposes. That those who contributed to the erection of the house did so, evidently, without any purpose of retaining it in private ownership, but with the view of creating a place where not only themselves, but others residing in the community, might obtain the advantages of school. In all those 12 years no one of those who contributed to the building of the house had sought' to exercise any' rights of private ownership as to the property. Some of them had removed from the settlement without attempting to make any disposition of their interest, and, so far as the evidence showed, none of them had ever paid any taxes on the property. The manner in which this house was built, and the use to which it has been put, clearly indicated that it was the design of those erecting it to dedicate it to the use of that settlement for school purposes. Long silence by the owners and use by the public is evidence of dedication. Sheen v. Stothart, 29 La. Ann. 630. No deed or act of conveyance was necessary to dedicate lands or rights in immovables to the public. The dedication may be inferred from facts and circumstances which leave no reasonable doubt of the intention of the owner to make such a disposition. Pickett v. Brown, 18 La. Ann. 560; City of Baton Rouge v. T. J. Bird, 21 La. Ann. 244; City of Shreveport v. Walpole, 22 La. Ann. 526; McNeil et al. v. Hicks & Howell, 34 La. Ann. 1090; Sheen et al. v. Stothart, 29 La. Ann. 630; Cincinnati v. White, 6 Pet. 440, 8 L. Ed. 452.
“The dedication of this schoolhonse to the use of the settlement conferred an interest therein on each citizen residing in that community, whether he contributed, or not, to the building of the house — an interest similar to that possessed by the citizens of a town in the streets and other places dedicated to public-use in the town. If, therefore, we might conclude that this schoolhouse was dedicated to the-citizens of the Walnut Creek community for school purposes, it might be asked, upon whom did the right devolve to protect this property against injury or destruction? Surely the right, belonged to some one, for the law does not bestow a right without furnishing a means for the protection of that right. Dudley v. Tilton, 14 La. Ann. 285; Code Prac. arts. 14, 20. The Baptist Church, upon whose land the house was built, lays no claim to it, and makes no effort to prevent its destruction by defendant. There are no trustees or incorporation by whom the property may be controlled. The citizens of the settlement alone have interest in it. To-them it has descended by a species of dedication, and to them it was useful, and the right should rest with them to protect it from trespass and spoliation. If they have not this power, then their rights may be jeopardized without there-being to them a legal remedy. Our law recognizes the right of one who has erected buildings on the soil of another to demand the value of the buildings when the owner of the soil takes possession of them. Civ. Code, art. 508.. If the law thus permits the owner of a building to recover its value from the owner of the soil upon which it is erected, how much greater should bo the right of the owner of the building to recover for its damage or destruction from-one who is not the owner of the land, but is a' mere trespasser 1 Private citizens may maintain actions concerning property of a public nature. Huston et al. v. Fisk, 10 La. Ann. 770; Dudley v. Tilton, 14 La. Ann. 283; Telle v. School Board, 44 La. Ann. 365, 10 South. 801. These petitioners are citizens of the community in-which this house was situated, and, in my opinion, they have the right to institute these proceedings, and it does not matter whether they have-children of school age or not. It is not alone the man who has children of school age who is-interested in the maintenance of a school in his neighborhood. All the citizens have an interest in such institutions. These institutions beget better society, better citizens, and often bring-about the enhancement of property values. Besides, the citizens without children may desire to send the children of others to school, as is the case of one of the plaintiffs in this suit. Or he may at some time in the future have children of his own of school age, and for that reason would be interested in protecting the school building near him. The act of the defendant in causing this house to be torn down and partially removed was a trespass for which he is responsible to the petitioners in damages,”
*859 On appeal to the Court of Appeal, that •court, after referring to the fact that the school building, which had been originally erected many years before by popular subscription of the citizens of Walnut Creek neighborhood, had fallen to decay, and that thereafter the church of the Walnut Creek Baptist Church Congregation had been used for the same purpose up to 1890, said:
“The second building- was erected on the church lot, the congregation, many of whom were patrons of the school, having consented thereto. This appears to have been the only schoolhouse in the neighborhood. Whenever and as often as public funds were available, a public school for the benefit of the neighborhood was conducted therein ; and at other times, when the available public funds were not sufficient to maintain the school for the length of session desired, they were supplemented by donations by the citizens, and amounts paid as tuition by the patrons thereof. In this way the school was maintained for a number of years. Subsequently the school board created a school district which included, if not all of Walnut Creek neighborhood, that portion of it in which this schoolhouse was situated, and established a central school at or near Simsboro • for the benefit of the children of that section of the country including- the Walnut Creek neighborhood. It appears that the Walnut Creek schoolhouse was then considered practically useless, as tbe public funds would be withdrawn from its support, and the advisability of tearing it down for the purpose of utilizing whatever suitable material might be obtained therefrom in the construction or repair of the building at Simsboro was discussed with the citizens of the Walnut Creek neighborhood. Some of them were not favorable to the plan, and others were. Whether any definite conclusion was ever finally reached by them or not, it appears that W. II. Phillips, who was a member of the committee charged with the arrangements for the establishment of the school at Simsboro, tore down the old schoolhouse, and removed that portion of the material thereof which was fit for use to Simsboro, to be used in the school building there. The plaintiffs herein, who were citizens of the AValnut Creek neighborhood, and who had evidently been among those opposed to the removal of the old schoolhouse, instituted this suit, not as the alleged authorized representatives of the neighborhood, but in their individual capacity. They contend that the citizens of the neighborhood had maintained a school in their own school building for the past forty years or more, and that the defendant was without any legal right or authority, and willfully and maliciously tore it down in order to force the patrons thereof, against their will, to patronize the Simsboro school. They asked that he be ordered to rebuild and restore the old schoolhouse, within a certain time to be fixed, to the conditions in which he found it, and that they have judgment against him for two hundred dollars for the loss of the use of the building, and the trouble, annoyance, and inconvenience resulting therefrom, and five hundred dollars as punitive damages for the alleged unlawful and malicious trespass. They asked further that, in the event he should not restore the building within the time, he be ordered to pay to them the four hundred dollars, the value thereof.
“The defendant filed first an exception of no cause of action, which was overruled. I-Ie then answered, after having filed an exception to the suit as to several of the plaintiffs on the ground that it had been instituted without their authorization or consent, which was only sustained as to one of them. The trial of the case resulted in a judgment ordering the defendant to restore the building within ninety days from its finality, and condemning him, in the event of his ’failure to do so, to pay the plaintiffs, with the exception of two of them, the sum of one hundred and fifty dollars, the adjudged value of the building. The defendant has appealed. We shall consider the exception of no cause of action alone, for, in our opinion, it should have been sustained, and the suit dismissed.
“The question as to whether a petition states a cause of action must be determined by an examination and analysis of the petition itself, and the test is whether', if the allegations of the facts contained therein be accepted as true, the plaintiff is entitled to the relief demanded. Eliminating all of the historical descriptive matter contained in the petition, and admitting' that the defendant illegally tore down and demolished the schoolhouse as alleged, the cause or right of action of the plaintiffs, or their right to recover in this action, is based solely on the facts that they were citizens of the Walnut Creek neighborhood, and that the schoolhouse was erected by the citizens and school patrons thereof, including themselves, by means of private contributions and funds and labor, and belonged solely to the citizens of the neighborhood, for school purposes. They do not allege that they compose all of the citizens of the community, or even a majority thereof, or appear as the authorized representatives of the community. Neither do they seek a judgment for the use and benefit of the citizens of the neighborhood in their collective or public capacity. They appear merely as individuals seeking private redress for the alleged injury sustained; fixing as the measure of damages the loss of the use of the building for school purposes, and the alleged annoyance and inconvenience suffered by them as individuals, and also the value of the building, in the event the defendant should fail, within a certain time, to be fixed by the court, to restore it to the condition in which it was when he began to tear it down.
“It is not contended that the plaintiffs, by reason of any contributions which they may have made towards the erection of the building, had any private or joint interest in the building. or that it belonged jointly to the individual citizens then living in the neighborhood. In *861 deed, they alleged that it belonged to the neighborhood, as such, for school purposes. Any person or persons who might have subsequently become citizens of the neighborhood would have had the same rights as those enjoyed by the plaintiffs or any other citizens. In other words, it must be accepted as true that the building was public property belonging to the neighborhood, as contradistinguished from private property belonging to the plaintiffs or other individual citizens living therein at the time. The plaintiffs had only the rights of a public character to the use and enjoyment of the building for school purposes, and their rights were common to all other citizens of the neighborhood, whether they contributed towards the erection of the building or not, or were citizens thereof when the building was constructed. There can be no dispute as to this proposition.
“Then it cannot be denied that the plaintiffs did not have or enjoy any exclusive or peculiar rights or interest, which could have caused the alleged injury or wrong to result in special or peculiar damages to the individual citizens. At any rate, the damages alleged and claimed are not of such character, and did not affect plaintiffs alone, but were sustained by all the citizens of the neighborhood. They resulted from a public injury affecting in common all the citizens of the neighborhood, or, in other words, the neighborhood as such, and the plaintiffs are no more entitled to the relief sought, than the other citizens thereof. But the plaintiffs do not base their right to the relief demanded on the ground that the act complained of resulted in any particular or special damage to them, as distinguished from the rest of the citizens, as might be done in the case of special injury to particular property or individuals by the maintenance of a public nuisance or unlawful obstruction of a public street or highway. Such case is not presented here. The act complained of was a public wrong, affecting the plaintiffs and all other citizens alike and in common. Then, what legal rights, disclosed by the petition, have the plaintiffs, as individuals, to the relief which they demand? This is the question presented, and not whether the citizens of the neighborhood, in their collective and public capacity, are entitled to redress, or whether the plaintiffs could legally recover as their representatives, and for the public use and benefit. The citizens are not in any manner before the court, and the plaintiffs are not suing for the public use and benefit. Although an act in the nature of a public wrong usually results in common injury only to a community, yet it may at the same time cause,_ in addition to the injury suffered alike by all, individual and special damage to one or, more citizens. In that event, and only in that event, such citizen or citizens can maintain a private action, not for the public wrong, but for redress for the special and particular injury suffered by them or by him or them. But where, as in this ease, as presented, injury is common to the public or community, and does not produce any special or particular damage to any one person or individual, as distinguished from the rest of the community, no individual citizen or citizens have the right to recover damages. The law does not recognize a public injury as a ground for private action. Cooley on Torts, and Blanc v. Murray, 36 La. Ann. 162.
“It is clear, as we have already stated, that the plaintiffs did not have any private rights as individuals in the building, or to the use and enjoyment thereof, but that the only rights they had were of a public character, and they were entitled to the enjoyment of them solely by reason of the fact that they were citizens of the neighborhood. As soon as they should remove therefrom and cease to be citizens thereof, their rights would cease to exist. So the alleged destruction of the building was a wrong done to the neighborhood as such, and there was no particular or special damage sustained by plaintiffs, different from that suffered by all of the citizens in common. It was a tortious act, which did not result in injury to plaintiffs, considered in their personal and individual capacity. Yet they are seeking to recover the value of the building and other damages, just as if the building belonged to them, or they had some private right to its use and enjoyment.
“Our conclusions in that respect do not differ from those of our learned Brother of the lower court — that the building had been dedicated to the use of the settlement, and the citizens residing therein had a public interest in it, as distinguished from a private interest. But in maintaining the plaintiffs’ action, and rendering a judgment in their favor, he, in effect, held that in actions for damages there is no distinction between public and private property, and that each citizen has the same right to recover damages from an injury to public property as he would have if the property belonged to him individually. We do not wish to be understood as stating that this was the ground on which he maintained the action, or that he held such to be a principle of the law. It was the effect of the ruling, or its logical result. There is nothing in the decision cited by him, and relied on by plaintiffs, which supports the view that they are entitled to recover in their action. It is true, as held therein, that an individual citizen may have a standing in court to prevent an illegal sale, misuse, or diversion of public property, or to protect his rights as a citizen to its use and enjoyment. But it does not follow that they may, as individuals, recover its value in the event of its illegal destruction, and general damages resulting therefrom, as demanded in this suit. It is true in a limited sense only that private citizens may maintain actions concerning public property, the right to recover being restricted according to the nature and character of the issue and the object of the action. This is an action sounding in tort, and a private citizen cannot maintain such action unless, as we have stated above, the act of which he complains resulted in a special and particular damage to him individually, as distinguished from the rest of the public, and he can only recover to the extent of such individual injury. The plaintiffs would be entitled to recover the damages claimed therein — particularly the value of *863 the building — only on the theory that they were the owners thereof, and had a private and individual interest therein. This would be contrary to the express allegations of the petition.
“Now, if the plaintiffs should obtain judgment of the defendant, and recover thereunder the value of the building, what redress would all other citizens having rights in every respect equal to those enjoyed by them have? If the plaintiffs have the right to recover, every other citizen or portion of citizens would have the same right. The defendant would then be compelled to respond to every citizen who might institute suit against him for the value of the building, and pay for it as many times, as there may be citizens. Likewise the resulting damages claimed would be multiplied as many times as there may be suits instituted against him. But it might be contended that the plaintiffs, who might not be able to force the neighborhood, as such, to seek redress, should be entitled to recover at least their proportion or share of the general damage. How could that be determined? And would it be possible for the court to ascertain as to how much each one is entitled? The first step would necessarily be to have a caucus of the neighborhood taken. Besides, this would be treating all' the citizens as joint owners of the property, and thus destroying its public character. Public property is in no sense the joint property of the citizens of any particular community or neighborhood. We do not understand that the decision in the case of St. Patrick’s Church v. Ice Company, 44 La. Ann. 1021, 11 South. 682, sustained in any respect the contentions herein of the plaintiffs. That was an action brought in the name of the congregation by the pastor thereof, and was dismissed on an exception for the want of averment of his capacity to institute the suit. But it expressly denied the right of the pastor, although he was a member of the congregation, to institute the action without special authority to do so. For a much stronger reason, he could not have maintained an action for his own benefit and use to recover the damage sustained by the church. But here the plaintiffs do not appear for the neighborhood, and it cannot be maintained that they represent the neighborhood, because they do not allege any authority to do so. They appear as individuals, and seek to recover judgment for their own use and benefit. If, in the case cited, the pastor, as a member of the congregation, had brought suit in his own name to recover individually damages for the injury to the building, the question presented would have been similar to this one.
“The injury they have sustained is not a private one, for which they would individually have a private action for damages. The neighborhood, or citizens thereof, as such, may have the right to appear in, court and seek redress for the injury inflicted, if' such be the case.
“It is not within our province to point out how they are to appear, or the remedy which they may have. It is sufficient for us to say that the plaintiffs herein, who do not compose the neighborhood, appear as its authorized representatives, cannot exercise the rights for their own individual benefit and advantage. They have no right as individuals, and cannot,- as individuals, recover. An action can be brought only by a person having a real and actual interest, which he pursues. Code Prac. art. 15; St. Patrick’s Church v. Ice Co., 44 La. Ann. 1021, 11 South. 682.
“They cannot base an individual right to recover on the allegations that the school was. without an incorporated or legally constituted board of trustees, or other individual or official head. The nature and character of their rights were not changed by reason of these facts. We have not discussed the demand contained in the prayer of the petition that the defendant be ordered to restore the building to the condition in which it was when he began to tear it down. This would be requiring of the defendant the doing of an impossible thing, and courts will not render orders with which it is not possible-to comply, or which they are powerless to enforce. To do so would be tantamount to rendering an absolute judgment in favor of the-plaintiffs for the value of the building, which they ask in the alternative. The action is one sounding in tort. Therefore, for the reasons assigned, it is ordered, adjudged, and decreed that the judgment appealed from be annulled, and avoided and reversed, and that the exception of no cause of action be sustained, and the suit dismissed; the plaintiffs and appellees to pay all costs.”
Opinion.
The relief which the plaintiffs sought from the court was:
First. An absolute judgment in their favor for $700 as damages, independently of any question as to the restoring or reconstruction of the school building; $200 of that amount being for loss of the building since its demolition, and the trouble and annoyance resulting therefrom, and $500 punitive damages for the defendant’s unlawful trespass upon the property, and for his' unlawful and malicious act in tearing down the house and breaking up the school.
Second. Judgment in their favor ordering the defendant to reconstruct or restore the school building.
Third. In the event of his failure so to do, a judgment in their favor of $400, as the value of the school building.
The district court failed to render judgment in favor of the plaintiffs as prayed for firstly. It, however, rendered judgment in their favor, ordering the defendant to re *865 store and rebuild the house, and place it as nearly as it was possible to do as when tom down, and, failing so to do within 90 days, then and in that event it gave judgment against defendant for the sum of $150.
The question submitted to us is whether the plaintiffs had such an interest in the building which was taken down by the defendant as would authorize them to institute this action and obtain the relief which they pray for.
Defendant maintains that when that building was once erected the title thereto vested exclusively in the people of Walnut Creek neighborhood, as did also the future use and control over the same; that the parties who had contributed money or labor or material for the construction of the building occupied thereafter no better piosition or relation to the building, or to its future usé or control, than did any other person who might go to, and form part of the people of, the Walnut Creek neighborhood; that the effect of their contribution towards the construction of the building did in no manner constitute or make them become joint owners of the building in the proportion which the amount which each may have contributed bore to the value of the whole sum in labor or material which was contributed; that the various contributions were in the nature of gifts to the people of Walnut Creek neighborhood, and thereby the contributors intended to dispossess themselves of property for the benefit of such neighborhood, instead of acquiring through their acts property for themselves individually. He maintains that, if any wrong was done through the taking down of the building, it was a wrong done to the people of Walnut Creek neighborhood collectively, and not to these particular plaintiffs, and remedy for the same could be invoked only by some one acting in their behalf collectively, or for their use and benefit. The question when submitted to us is complicated by the fact that the injury cornplained of had been completed before suit was brought, so that preventive relief is too late.
We think the position taken by the defendant, that the parties contributing money, material, or labor for the construction of the building did not thereby acquire any ownership in the same, and that their rights in respect to the same were precisely such as, and none other than, belonged to every other person forming part of the people of Walnut Creek neighborhood, is correct. The contributors to the building, for instance, had not the right, after it had been once built and its use for school purposes accepted, to discontinue that use without the consent of the people of Walnut Creek neighborhood, and dispose of the house by a sale made to effect a partition by licitation among the contributors. Le Blanc v. Lemaire, 105 La. 540, 30 South. 135.
But while the plaintiffs have no greater rights than other citizens of Walnut Greek neighborhood, they certainly have the same rights as others did. We are of the opinion that any one citizen of that neighborhood would have had the legal right to have instituted legal proceedings to have prevented the unauthorized taking down of the building by the defendant, and, had this suit been of that character, we would have maintained the action. The suit, however, is not of that character. The building, rightly or wrongly, had been taken down before the suit was brought. The demand, as made, is for a judgment in favor of the plaintiffs individually by reason of damages sustained individually from that act, coupled with further judgment in their favor individually should defendant fail to restore and reconstruct the property as they asked the court to order him to do. The first prayer for an individual judgment for damages would necessarily have to rest upon allegations setting forth special and direct damages to themselves — distinct from the damages which all *867 the citizens of the Walnut Creek neighborhood would have suffered alike. We fail to find in plaintiffs’ allegations damages of that character. The pleadings established the fact that the building was erected for the purpose of having prospectively a private school therein from time to time, when and if contributions sufficient for that purpose should be raised, and a teacher should be obtained. It is not pretended that the school was in operation when the building was taken down, or that there had been at any time since it was taken down an opportunity for or an occasion to use it. Plaintiffs do not' pretend that they individually would have had, or have now, any use for the building, other than that of having a private school taught therein.
The district court was not warranted in giving judgment in favor of the plaintiffs, individually and absolutely, on their prayer, for ?400, as the value of the building, in the event defendant should fail to restore the building to the condition it was when taken down, upon the court’s order so to do. The plaintiffs were not owners of the house.
For the reasons herein assigned, it is ordered, adjudged, and decreed that the judgment of the Court of Appeal be, and the same is, affirmed; the rights of the people •of Walnut Creek neighborhood in the premises being expressly reserved.