## PAULINA PICKETT et al. *v.* WM. BROWN et. al.

*Long silence of parties pretending ownership of property converted to public use, and the peaceable and uninterrupted use and possession by the public, is evidence of dedication of the property to the public for public use.*

*No deed or act of conveyance is necessary to dedicate land or rights in immovable property to the public.*

*The dedication of property for public uses may be inferred from facts and circumstances, which leave no reasonable doubt upon the mind of the intention of the owner to make such a disposition.*

*There is no particular form necessary to a dedication of land to public use. All that is required is the assent of the owner of the land, and the fact of its being used for the purposes intended.*

APPEAL from the District Court, Parish of Caddo, *Weems, J.* *J. W. Jones,* for appellant. *Geo. Williamson* and *Nutt & Leonard,* for appellees.

The facts are stated in the opinion of the Court.

TALIAFERRO, J. The plaintiffs bring this action to recover three town lots in the city of Shreveport. They aver ownership of the property and complain that the defendant is in possession and illegally withholds it

from them. Subsequently, the defendant Brown, in possession as lessee from the city of Shreveport, abandoned the property, and plaintiffs, by an amended petition, proceeded against the city of Shreveport, adopting against the new defendants all the allegations and demands set forth in their original petition. The defendants, by their attorney, put in a general denial, and aver that the title to the property claimed by plaintiffs is vested in the city of Shreveport for public uses; that it was so dedicated by the original proprietors of the ground, who laid out the city, and that the property claimed by plaintiffs has been held and considered as appropriated for public uses since the incorporation of the city, on the 20th of March, 1839; since which time the city has held peaceable possession of and exercised ownership over said lots of ground.

It appears that one Larkin Edwards, in whose favor a grant of six hundred and forty acres of land was made, and which now embraces the city of Shreveport, being a part of the land obtained by the Government from the Caddo Indians, sold his grant on the 24th day of January, 1835, to Angus McNeil and other persons, who formed themselves into a company and established the town of Shreveport. This company was formed on the 27th of May, 1836, and it remained in existence until the 14th of December, 1841. The company, during this period, sold a large number of lots and parcels of ground within the incorporated limits; and in 1843, it proceeded, by judicial partition, to divide all the lots remaining unsold. The decree of partition was rendered on the 14th of December, 1841, and the partition was effected on the 10th of May, 1843. This act seems to have been made with great care and exactness. It assigns to each of the co-proprietors his share of the unsold lots, designating each lot by its number, and specifying the square or block in which it is situated. By the plat or diagram of the city of Shreveport presented in the record, it appears that the street called "Commerce street," running up and down the river, is the nearest street fronting the river. Between Commerce street and the margin of the river, there lies a scope of ground constituting what is commonly called an "open space;" a term usually employed in legal parlance to designate the ground running immediately along the margin of a river or water course, in front of a town, and extending back to the front, or nearest buildings to the river. The lots in controversy in this case are situated upon the open space between Commerce street and the water's edge.

The plaintiffs urge that defendants have no title, by any of the modes prescribed by law, for the transfer of real estate. They contend that the lots they sue for are not necessary for public use, and that the corporation has never so appropriated them.

The defendants contend that the property in controversy was dedicated for public use by the original proprietors who laid off the town. They present no other title.

That the dedication of property for public uses may be inferred from facts and circumstances, which leave no reasonable doubt upon the mind of the intention of the owner to make such a disposition, we think there can be no question.

The case of the *City of Cincinnati* v. *The Lessee of White*, decided by the Supreme Court of the United States, and reported in 6 Pet. Rep., is clear on the point. This doctrine is recognized in various decisions of the Supreme Court of this State. To several of these we shall presently refer.

Let us now inquire into the facts presented in this case, to ascertain how far the defendants are sustained in their plea of dedication.

By the act of partition referred to, and which was effected on the 10th day of May, 1843, after much care had been taken to ascertain all the unsold property belonging to the company within the incorporated limits of the city, it does not appear that any disposition whatever was made of the ground lying between Commerce street and the river. There is no evidence that the company ever exercised any act of ownership over it. There is no fact shown to raise the slightest presumption that the Company ever intended to interpose any claim to the property. The long silence, as it seems, of those plaintiffs themselves, and the peaceable and uninterrupted possession of the property by defendants for the public use, of the "open space," from March, 1839, to the institution of this suit, in January, 1861, are facts also to be noticed in forming a conclusion on the subject. Grounds situated like those forming the subject of this litigation, are indispensably required for public use. Commerce and navigation demand the use of the shores of navigable streams, and their operations can not be performed successfully without the free use of them. Open grounds must be left in front of cities and towns, on the margins of navigable streams, and the public and free use of them must be conceded ex necessitate rei. The plaintiffs offered to prove that the particular lots in dispute are not necessary for public use. One witness testified that he knew of no public use the lots could be put to. The plaintiffs show that these lots, or some of them, were leased out by the corporation to private individuals for their private use, and that this was done to raise revenue.

The question, as to whether any portion of the open space is necessary for public purposes, is clearly coram non judice, and can not be considered. If the original owners had dedicated the entire open space for public uses, it is not material to inquire to what uses it is subjected. In the great controversies which have arisen in regard to the ownership of front grounds or open spaces, at New Orleans, the important object aimed at was to establish ownership to the dedicated space, in order to own the immensely valuable property arising from the alluvial accretions of the Mississippi. To several of the cases reported, in reference to these contestations, we have been referred by both parties in this case. In the case of the *Municipality No. 2* v. *Orleans Cotton Press*, Judge Bullard, who

delivered the opinion of the Court, held that there was no sufficient showing that Madame Delord, the original owner of the land in dispute, in laying out lots for sale, intended to divest herself of the ownership of the property; and this was the point on which the case turned. But, the same able Judge recognized the doctrine in 6 Peters, before cited, that "there is no particular form necessary to a dedication of land to public use. All that is required is the assent of the owner of the land, and the fact of its being used for the purposes intended."

This doctrine is again held in the case of *The New Orleans and Carrollton R. R. Co.* v. *The Town of Carrollton,* 3 An. 282; likewise in 7 An. 223 and 498, the same rules are approved. These, and other cases that have arisen in our jurisprudence, follow and adopt the principles announced in the case quoted in 6 Peter's Reports. · It is there laid down that "neither a deed nor a grantee is necessary" in the matter of dedication of property to public uses.

From the facts enumerated in this case, we think that the inference is clear that the company that owned the land upon which the city of Shreveport stands, intended to dedicate the public place in that town lying between Commerce street and the river, to public uses. All the conditions required by the authorities we have noticed, to render a dedication complete, seem to us to be fulfilled in this case.

It is therefore ordered, adjudged and decreed, that the judgment of the District Court be annulled, avoided and reversed. It is further ordered, adjudged and decreed, that the property in controversy in this case be and the same is hereby decreed to belong to the corporation of the city of Shreveport, for public uses; that said corporation be quieted in its possession of the same, and that the plaintiffs and appellees pay costs in both Courts.