No. ——

### First Circuit Appeal
### Consolidated Cases

**B. ZENERO AND BETTY ZENERO v. C. A. PRESSEY**

**C. V. HOCUM v. C. A. PRESSEY**

**SAM HORROW v. C. A. PRESSEY**

**NORFOLK TENT AND AWNING COMPANY AND M. B. PRESSEY,**
### Intervenors

(December 2, 1924, Opinion and Decree.)

(*Syllabus by the Editor.*)

1. **Louisiana Digest — Garnishment—Par. 21, 22.**
   Where money is on deposit in a bank in the name of an organization subject to check by A, the executive officer of the organization, and B, a suit filed

making B the defendant and attachment issued thereunder making A as executive officer of the organization answer the interrogatories as garnishee; the garnishment is null and void, because the money was in the possession of the bank which made it necessary for the bank to be served with interrogatories.

(Code of Practice Articles 246 and 264.)

2. **Louisiana Digest — Garnishment—Par. 60.**

Where money is on deposit in a bank in the name of an organization subject to check by A, the executive officer of the organization, and B, a suit filed making B. the defendant and attachment issued thereunder making A as executive officer of the organization answer the interrogatories as garnishee; the garnishment is null and void, because garnishees can not be bound by the answers of their agents, unless the latter are authorized to that effect. In this case there is no proof that A, the executive officer of the organization, had any authority to bind the organization by his answers to the interrogatories.

3. **Louisiana Digest—Ownership—Par. 7, 9.**

An intervenor in an attachment and garnishment proceeding can not be declared the owner of funds deposited in a bank subject to a check by A, executive officer of an organization, and B, where the intervenor claims the debt due by B for certain articles which were leased to him.

Appeal from the Parish of East Baton Rouge, Hon. W. Carruth Jones, Judge.

This is a consolidation of three suits to collect money due on open account coupled with attachment and garnishment proceedings. There was also an intervention.

There was judgment sustaining the garnishment of Sam Harrow but dismissing the others. There was also judgment dismissing the intervention. Plaintiffs Hocum and Zenero and the intervenor appealed.

Judgment affirmed.

CONSOLIDATED.

MOUTON, J. Feb. 28th, 1924, B. and Betty Zenero filed suit against C. A. Pressey, a non-resident of the State for $484.00 and asked for the issuance of a writ of attachment. In their petition Grotto Circus, a voluntary association, of Baton Rouge, was indebted to C. A. Pressey, defendant, or had property in its possession or under its control belonging to said Pressey; that they desired to have the Shrine Club and Grotto Circus made Garnishees and prayed for citation on the Shrine Club and Circus with A. J. Thomas, executive officer, and that they be ordered to answer the interrogatories annexed to their petition.

A suit for $1,647.33, was filed on the same date against C. A. Pressey, defendant, by E. V. Hocum, in which, upon similar allegations as those made in the case of B. and Betty Zenero, he asks for the issuance of an attachment and garnishment process against the Shrine Club and Grotto Circus, a voluntary association, and that with A. J. Thomas, executive officer thereof, they be ordered to answer the interrogatories annexed to his demand.

Later, March 4th, 1924, Sam Horrow filed suit against Pressey for $2,200.00, asking for the issuance of attachment and garnishment process. In his petition Horrow alleged that this special association, the Shrine-Grotto Circus and the Abmar Grotto Club of Baton Rouge, had through their joint executive committee, composed of O. O. Ogden, W. G. Gay, A. C. Mudinger, John G. Adams, W. O. Blair and A. J. Thomas, all residents of Baton Rouge, money rights or other property in their possession belonging to Pressey, representing his share of the receipts derived from a certain carnival enterprise. Horrow asked under the attachment that the Shrine-Grotto Circus, through its joint executive committee, and the individual members thereof, in their individual and official capacities, be made garnishees, and required to answer interrogatories annexed to his petition. Service of the petition with

accompanying interrogatories was made on the Shrine-Grotto circus and Abmar Grotto of Baton Rouge, through A. J. Thomas, its executive officer, and also on the members composing this committtee, hereinabove named, individually, and in their official capacity as members thereof.

In the suit of B. Zenero and Betty Zenero, A. J. Thomas in his capacity of executive officer of the Shrine Club and Grotto Circus, filed his answer to the interrogatories therein propounded, saying that under the contract of the Shrine Club with Pressey, defendant, all the expenses incurred were to be paid out of the gross receipts from the circus, and the balance remaining after such payments representing the net profit, if any, should be divided, fifty per cent for defendant, and fifty for the Shrine Club; that under the contract all monies received from all sources connected with the circus were deposited in a local bank and checked out on the joint signatures of Pressey, defendant, and A. J. Thomas, respondent, acting under the direction of the Shrine Club and Grotto —that at the time of the service of the interrogatories on respondent the circus was still in operation, all expenses had not been paid, the books had not been audited, so that it was impossible for respondent to say whether or not he had any funds or property belonging to defendant in writ in his custody at that time that after the circus had ended, and the books were audited, it was found that the net profit realized amounted to the sum of $1,555.78, defendant being entitled therein to $767.80, less $206.00 for advances made to him, leaving in his favor $561.89 which respondent was holding subject to the further orders of the court—that respondent had also in his possession $500.00 for rental due the Norfolk Tent and Awning Company and which he was holding subject to the orders of the court. A similar answer was filed by A. J. Thomas, in his said capacity, to the interrogatories propounded to him, in the suits of E. V. Hocum, the Zeneros and Sam Horrow against N. C. Pressey, hereinabove referred to.

Interventions or third oppositions were also filed by M. B. Pressey, and the Norfolk Tent and Awning Company which were dismissed on exceptions of no cause of action. The Tent and Awning Company has appealed, M. B. Pressey has not, and is therefore eliminated from this obligation.

It the suit B. Zenero and Betty Zenero, the court in confirmation of a default rendered judgment in favor of plaintiffs and against C. A. Pressey, defendant, for $484.00, the amount claimed in their demand; it was in the judgment further decreed that the writ of attachment therein issued be maintained; and that the garnishment, based therein, be also maintained. A similar judgment was rendered in favor of E. V. Hocum vs. A. C. Pressey for the sum of $1,647.33, claimed against him by plaintiff, with maintenance of the writ of attachment and garnishment process. Sam Horrow also received judgment for $2,200.00, claimed by him on his main demand against C. A. Pressey defendant, in which it was also decreed that the writ of attachment obtained by him therein be maintained and enforced against defendant.

April 4, 1924, after the rendition of the judgments aforesaid, B. Zenero and Betty Zenero and E. V. Hocum upon moving and suggesting to the court, through their attorney, that the answer of the Shrine Club and Grotto Circus field March 17, 1924, hereinabove referred to, was evasive, and legally incorrect the court ordered the Shrine Club and Grotto Circus to show cause on the 9th of April, 1924, why these answers to said interrogatories should not be set aside and why judgment should not be rendered against it in the amount it had in its hands, to wit, $1,161.89.

It will be noticed that this order of the court which was based on the motion of Counsel for plaintiffs in two suits mentioned, was to have the previous answers nullified, and that judgment be rendered against the Shrine Club and Grotto Circus. The motion and the order thus granted by the court show clearly that according to the averments of the plaintiff above named, the judgments on the main demands heretofore mentioned were directed exclusively against A. C. Pressey, defendant, and had no connection whatsoever with the Shrine Club and Grotto Circus, and its executive officer, A. J. Thomas as garnishees. The judgment rendered in favor of Sam Horrow on its main demand against C. A. Pressey must also be similarly regarded.

It will be observed that the court in compliance with the motion of counsel to have the original answers of the Shrine-Grotto Club annulled ordered answers thereto be made on April 9, 1924. This order was entered on April 4th, 1924. Later, on April 7, the court on the application of Sam Horrow ordered all the parties to the litigation, including intervenor, the Norfolk Tent and Awning Company, to answer a rule granted to said Sam Horrow in which he claimed preference and priority over the money garnished in the case. On March 31, 1924, prior to the issuance of this rule, by supplemental petition, Sam Horrow claiming that the Union Bank and Trust Company of Baton Rouge was indebted to defendant, Pressey, or had property, money or effects in its possession, as depository or otherwise, belonging to said defendant obtained the service of interrogatories on said bank in accordance with the claim of Horrow as above stated. In answer to these interrogatories the bank said it had at the time of the service of the interrogatories and had when it filed its answer, in deposit, the

sum of $1,074.39, in the name of Shrine-Grotto Circus subject to check by A. J. Thomas and C. A. Pressey. The members of the committee of the Shrine and Grotto Circus in answer to the rule filed by Sam Horrow on the 7th of April, said that the two amounts $561.89 and $500.00, which together make a total of $1,061.89, was at the time of the service of the interrogatories accompanying said rule, on deposit in the Union Bank and Trust Company of Baton Rouge, in the name of the Shrine and Grotto Circus, subject to check by A. J. Thomas, acting for respondents, and C. A. Pressey, defendant in the writ. The respondents state that the $561.89 represented the share of C. A. Pressey of the net profits which were earned in the circus enterprise under the contract of the Shrine Club and Grotto with Pressey. They further declared that the other sum of $500.00 was due as rent and for which they had given Pressey a check, but being apprized that this sum was subject to garnishment in the other suits, they, in consequence, notified the drawee bank to stop payment.

The contract between the Shrine-Grotto and Pressey, annexed to the pleadings in the suit of Hocum vs. Pressey, shows that after payment of all expenses the net profits were to be divided equally between these parties; also that the rent for tent was to be deducted from the gross receipts; and that Pressey guaranteed the Shrine-Grotto against any loss in any way. The terms of this contract, the answers of A. J. Thomas to the interrogatories propounded by Hocum, by B. and Betty Zenero, and the answers of the bank, make it clear that the money deposited with the bank was the property of C. A. Pressey. It appears clearly from this contract, and answers, that the Shrine-Grotto had no claim to the funds so deposited, nor had the bank.

Article C. P. 264, says that a creditor is entitled to a garnishment against a third

person if he has in his possession property belonging to his debtor, or that he is indebted to such debtor. Clearly, the money here in possession of the bank, a third party, was the property of C. A. Pressey, the debtor of these common creditors, plaintiffs in these suits. The bank had actual possession of that money, and was a necessary party to this suit.

Counsel for Hocum and the Zeneros claim that the Shrine-Grotto had possession thereof. It is certain from the answers to the interrogatories, and other evidence that this money was not under the exclusive control and possession of the Shrine-Grotto—or of A. J. Thomas, its executive officer. This clearly appears from the answer of Thomas, himself, to the interrogatories in which he says that all checks against the deposit with the bank had to be signed by Thomas as the representative of the Grotto Club, and by C. A. Pressey, defendant. At most, Thomas, for his association, had only joint control with Pressey of the funds so deposited in bank. Such being the situation the interrogatories which were served by Hocum and the Zeneros on Thomas or the Grotto Company, alone were not sufficient in law to affect a garnishment of the funds—even taking the view that their possession was joint with that of Pressey. The bank was an essential party, but no garnishment process was demanded against it by Hocum and the Zeneros. The bank was brought in as a garnishee by the proceedings instituted by Sam Horrow whose process meets with the requirements of the Code of Practice. Counsel for Hocum and the Zeneros contend that the judgment rendered in favor of his clients maintained the garnishment process which had been issued in their two suits; that the garnishment proceedings inaugurated by Sam Horrow were subsequent in date thereto, that their judgment so obtained

could not thus be attacked collaterally for the benefit of Horrow.

These judgments so obtained on March 24, 1924, before mentioned, had reference exclusively to the main demands of Hocum and the Zeneros herein filed against C. A. Pressey, defendant, were not directed against any one as garnishee, as appears from the record, for the reasons herinabove given. The garnishee or garnishees not being affected by these judgments, the question of a collateral attack does not arise. In this case, as before stated, service of the interrogatories, was, in accordance with the demand of Hocum and the Zeneros, served on the Shrine Club and Grotto Circus, through A. J. Thomas, executive officer, the said Association is a voluntary association, as is shown by the pleadings. Personal service of interrogatories must be made on the garnishee, otherwise no seizure will bind money, property, rights or claims in his hands. C. P. 246. This rule is inexorable unless modified or changed by statute. O'Connor vs. Jones, 129 La. 411, 56 South. 350. Attorney for Hocum and the Zeneros contends that service of interrogatories, if made on the managing official of a voluntary association is sufficient to bind it as a garnishee under provisions of Act 170, 1918. This act declares that after its passage it shall be lawful to sue any voluntary association on an obligation incurred for its benefits, in its name, and that service on the managing official of such association would be legal. It is obvious that there was no suit filed here against this association on any obligation incurred for its benefit or otherwise. On the contrary it is sought herein to make it respond for the obligations of others in which it has no interest or concern. Act 170 of 1918 does not in any way affect the rule requiring personal service under Article 246, C. P. has no reference to garnishment pro-

ceedings and has no application to the issues herein involved.

Counsel for Hocum and the Zeneros contends also that the service made on A. J. Thomas, executive officer, was legal under Act 179, 1918. Section 2 of that Act directs the method of serving garnishment process upon a party in his own name or in his representative capacity. The provisions of this section has reference to members of partnerships, to the executive officer of domestic corporations, public boards or to the designated agents of foreign corporations. A. J. Thomas, the executive officer, of the Shrine and Grotto Club of Baton Rouge does not come within the purview of the section of the statutes above referred to. He was the mere agent of the Shrine and Grotto Club. It is well settled that garnishees can not be bound by the answers of their agents, unless the latter are authorized to that effect, Lewis vs. Franks, 18 La. Ann. 564. It nowhere appears that A. J. Thomas, as executive officer of the club, was clothed with any authority. Hence the Shrine-Grotto Club or its members could not be bound by the answers to the interrogatories.

Counsel for Hocum and the Zeneros says also that Act 179 of 1918, permits service of process on any "Executor, Administrator, Tutor, Curator, Liquidator, Receiver, Agent or other representative capacity". This provision of the Act is found in Section 1. No. 2—and is not intended to cover the requirements for the service of garnishment process which is specially provided for in section two of the statute hereinbefore mentioned. This section designates those upon whom such service may be made, which, for the reasons heretofore given, does not include the executive officer of a voluntary association.

INTERVENTION.

The Norfolk Tent and Awning Company, intervenor, claims in its petition to have leased certain articles therein described, to C. A. Pressey, defendant, for the sum of $500.00, payable weekly; that $500.00 due for the rental of this property had been seized under attachment proceedings in the suits of the plaintiffs herein. Intervenor asserting its ownership of these unds, prayed to be decreed the owner thereof, for the annulment of the attachment, and for the restoration of these $500.00 to its possession.

This intervention was dismissed on an exception of no cause of action. We are not, however, restricted in the examination of the appeal from the intervention to the facts admitted under the exception, as other facts were proved and others appear from the pleading without any objections made thereto. The record shows that the tent for which intervenor claims its rental under its contract with C. A. Pressey, was rented by Pressey to the Shrine and Grotto Club of Baton Rouge under a written agreement. It is shown that the $500.00 under attachment claimed by intervenor had been deposited in bank by the Shrine Club for Pressey for which the Club had given Pressey a check, but which was not collected by him, the bank having been notified to stop payment because of the garnishing of the funds in these proceedings. These funds had been deposited to the credit of Pressey by virtue of his contract with the Shrine Club, were his property when attached, and did not belong to intervenor.

The contractual relations which existed between intervenor and Pressey could not affect these funds deposited for Pressey by the Shrine Club in compliance with its agreement with him. There was no privity of contract between the Shrine Club and intervenor, which has no title to the

$500.00 funds claimed in its intervention. It was properly dismissed.

The judgments appealed from in these consolidated cases are therefore affirmed.

ELLIOT, J. I agree that the Intervenor, Norfkolk Tent and Awning Company, cannot prevail but dissent from the opinion of the majority that Samuel Horrow has preference over E. V. Hocum and B. B. Zenero. The parties E. V. Hocum and B. B. Zenero made the first attachment by serving writ of garnishment on Shrine Club and Grotto Circus represented by A. J. Thomas and C. A. Pressey the common debtor and the attachment of each was sustained. In my opinion Shrine Club and Grotto Circus represented by A. J. Thomas and C. A. Pressey had joint possession of the money in the bank. I think the bank was a mere holder and custodian for Shrine Club and Grotto Circus represented by Thomas and for Pressey. The bank was therefore not a necessary party to the attachment in order to effectuate a seizure of the money; the service on Shrine Club and Grotto Circus represented by Thomas and service on Pressey was sufficient.