This is a petitory action involving 34 68/100 acres of land fronting on the Mississippi River in the Parish of Plaquemines. The basis of plaintiffs' alleged title is a certificate of redemption which they obtained from the Register of the State Land Office on November 9, 1938, after having paid the Register $32.47, the amount of taxes and interest, for the nonpayment of which the property was adjudicated to the State of Louisiana on September 23, 1922.
The property in question is contained within the boundaries of what is known as the "Bohemia Spillway", a project undertaken and completed by the Board of Levee Commissioners of the Orleans Levee Board, which we shall hereafter refer to as the Orleans Levee Board, by direction and under authority of Act No. 99 of 1924.
The plaintiffs' alleged redemption of the property is claimed to have been authorized by Act No. 47 of 1938, which provides that "any lots or lands bid in for and adjudicated to the State, or any of its political subdivisions, for nonpayment of the 1936 taxes or the previous years' taxes * * *" may be redeemed by any "person interested personally or as heir, legatee, creditor or otherwise, except a judgment creditor of the owner."
The suit is brought against the Orleans Levee Board which is said to be in unlawful possession of the property. The defendant relies mainly upon the contention that the State of Louisiana in authorizing and instructing it to erect the Bohemia Spillway has dedicated the property to public use and *Page 784 
that, consequently, it is not subject to redemption.
Plaintiffs contend that because of the redemption laws of the State of Louisiana, particularly Act No. 47 of 1938, the State's title under the adjudication for taxes is "inchoate" due to the fact that such title "can be, at any time, divested by the redemption of the property by the tax debtor as permitted by law". In this counsel is mistaken. The tax debtor may have an inchoate right of redemption, but the State, by reason of the adjudication to it for the unpaid taxes, secured an absolute, unequivocal title with every element of ownership including the "usus, fructus and abusus". There is no such thing as a "suspended fee" in Louisiana where all titles are allodial. It is of the very essence of our system of law that the ownership shall always be lodged in someone whatever may be the rule in other jurisdictions. For example, the breath barely leaves the body of a dying owner before the title vests in his heirs. Le mort saisit le vif. Revised Civil Code, Article 940. It follows that when the State acquired this property on September 23, 1922, for the nonpayment of taxes for the year 1921, it, like any other owner, had the right to do with it whatever it pleased.
The several levee board acts of the State contain phraseology which is somewhat misleading. For example, the Grand Prairie Levee Board, within the territorial jurisdiction of which this land is situated, was created by Act No. 24 of 1898. This act provided that all state lands within the district "now belonging or that may hereafter belong to the State of Louisiana * * * shall be, and the same are hereby given, granted, bargained, donated, conveyed and delivered unto said Board of Commissioners for the Grand Prairie Levee District". It further provided that it "shall be the duty of the State Land Office, on behalf of and in the name of the State, [to] convey to the said Board of Levee Commissioners by proper instruments of conveyance the lands hereby granted or intended to be granted and conveyed to said Board".
This and similar acts have been held, however, to convey no title to the levee boards who have not obtained proper certificates from the State Land Office. State ex rel. Fitzpatrick v. Grace, 187 La. 1028, 175 So. 656; Standard Oil Company of Louisiana v. Allison, 196 La. 838, 200 So. 273.
There is no contention here that any formal certificate of conveyance had been given by the State to the levee board, consequently, its ownership of the property is not affected by anything which is in the levee board statutes.
In 1924, by Act No. 99, the Legislature provided for the construction of what is known as the "Bohemia Spillway" and, by this Act, the Orleans Levee Board, whose jurisdiction is co-extensive with the Parish of Orleans or the City of New Orleans, was authorized to go into the adjacent Parish of Plaquemines and construct the spillway in order to protect the City of New Orleans from overflow of the Mississippi River, and, to that end, in its discretion, to locate and design the spillway subject to the approval of the State Board of Engineers and the Mississippi River Commission (the governmental authority), as appears by the first section of the act: "Be it enacted by the Legislature of Louisiana, That the Board of Levee Commissioners of the Orleans Levee District be and it is hereby authorized in its discretion in order to reduce the flood levels of the Mississippi River and to better protect the City of New Orleans from danger of overflow by the high waters of the Mississippi River, to construct or cause to be constructed on the east bank of the Mississippi River in the Parish of Plaquemines a spillway or waste wier, or other works, so located and designed according to plans and specifications as shall have been approved by the State Board of Engineers and the Mississippi River Commission."
Section 2 provides: "That the Board of Levee Commissioners of Orleans Levee District be and it is hereby authorized to acquire by purchase, donation or expropriation the lands or other property necessary for the construction of such works. It shall also be authorized to receive and expend for said purpose any funds contributed to it by the United States Government or any of the Levee Districts of the State benefited by said works, which said Levee Districts be and they are hereby authorized to make such appropriations for that purpose as to them seem meet and proper."
Section 3 orders the Orleans Levee Board, before taking possession of any privately owned property within the area to be covered by the spillway, to acquire possession of it "by purchase or expropriation."
Section 5 of the act provides: "That the Board of Levee Commissioners for the Orleans *Page 785 
Levee District be and it is hereby authorized and directed to arrange with the Board of Commissioners for the Grand Prairie Levee District and the Board of Commissioners for the Plaquemines Parish East Bank Levee District whereby the bonded and other indebtedness of said two levee districts, as to the area to be affected by the proposed works, shall be acquired by said Orleans Levee District, be paid for buy it, at values as of June 17, 1924, and cancelled; and said two levee districts be and they are hereby authorized, upon the completion of the plans and after their approval by the State Board of Engineers and the Mississippi River Commission, to consent to the removal, at the expense of the Orleans Levee District, of the Levee systems of these two districts in that portion of the levee systems thereof as may be determined by the Orleans Levee District shall be removed."
Acting under the direction of the Legislature the Orleans Levee Board constructed the spillway and within its confines is included the land claimed by plaintiffs. One of the contentions made by plaintiffs' counsel is that since the Orleans Levee Board did not expropriate the plaintiffs' land or pay for it, that it did not comply with the terms of the act authorizing the construction of the spillway and that, consequently, the land was open to them for redemption in 1938. Our answer to that is that the land, at the time of the passage of the spillway act of 1924, belonged to the State of Louisiana and we know of no method by which expropriation proceedings could be had contradictorily with the State of Louisiana, nor do we believe the Orleans Levee Board acting, in this instance, as the agent of the State of Louisiana, was required to tender to the State the value of any land contained within the limits of the Bohemia Spillway.
In 1926, when the spillway had been completed, the Legislature in Act No. 160, in its title, declared:
"Whereas, by Act No. 99 of 1924, the Board of Levee Commissioners of the Orleans Levee District was authorized to construct a spillway in the Parish of Plaquemines; and
"Whereas, acting under said authority said Board of Levee Commissioners did construct such spillway; and
"Whereas, the said Act authorized and directed the said Board of Commissioners of the Orleans Levee District to assume and pay the bonded and other indebtedness of the said Plaquemines Parish East Bank Levee District as to the area effected [affected] by the proposed works; and
"Whereas, to effect the legislative intent it is necessary to clothe the State Treasurer with certain powers."
The act then proceeds to provide in detail for the redemption of the bonds of the Plaquemines Levee District.
It is our opinion that these two acts, 99 of 1924, and 160 of 1926, constitute a dedication to public use of state owned property within the area known as the "Bohemia Spillway."
In La Salle Realty Company of Louisiana v. City of New Orleans,169 La. 1035, 126 So. 545, 546, the court said: "There is no sacramental form to be followed in dedicating property to public use."
In City of New Orleans v. Carrollton Land Company,131 La. 1092, 60 So. 695, 697, the Court quotes with approval the syllabus in the case of City of Shreveport v. Walpole, 22 La.Ann. 526: "No deed or act of conveyance is necessary to dedicate land or rights in immovable property to the public. Nor is any particular form necessary to the dedication of land to the public use. All that is required is the assent of the owner of the land, and the fact that it is being used for the purposes intended. [Pickett v. Brown], 18 La.Ann. 560; [City of Baton Rouge v. Bird], 21 La.Ann. 244. A third party occupying lands that have been dedicated to the public use is without the capacity to acquire title thereto, because such lands are from the moment of the dedication out of commerce, and are not subject to individual or private ownership. 21 La.Ann. 244".
Lands which have been dedicated to public use are not subject to private ownership. See Police Jury of Parish of Plaquemines v. Foulhouze et al., 30 La.Ann. 64, where it was said: "Property dedicated to public use can not be the subject of private ownership. It is out of commerce, and not liable to seizure. R.C.C. 449, 454, 455 and 458. Police Jury of West Baton Rouge v. Michel, 4 La.Ann. 84; (Municipality No. 2 v. Palfrey), 7 La.Ann. [497], 498; (Pickett v. Brown), 18 La.Ann. 560; (City of Shreveport v. Walpole), 22 La.Ann. [526], 527; (City of Baton Rouge v. Bird), 21 La.Ann. 244; (Burke v. Wall), 29 La.Ann. 38, (29 Am.Rep. 316); *Page 786 
(Sheen v. Stothart), 29 La.Ann. 630 — Dillon on Municipal Corporations, Sec. 531."
Counsel, however, says that the Act of 1938 provides that "any lots or lands bid in for and adjudicated to the State, or any of its political subdivisions, for nonpayment of the 1936 taxes or the previous years' taxes * * *" may be redeemed by any "person interested * * *" and if the title to this property is still in the State of Louisiana why is it that the terms of the Act do not permit its redemption by a tax debtor? It is, of course, true that title to the land claimed by plaintiffs in this proceeding was in the State of Louisiana when the plaintiffs attempted to redeem the property in 1938 and, as a matter of fact, the title is still in the State of Louisiana, but since it has been dedicated to public use it is no longer subject to redemption by any tax debtor. The title to the land on which the State Capitol rests as well as the title to the land on which this Courthouse sits is in the State of Louisiana, as is also the title to the public highways of the State, but it is inconceivable that anyone would contend that any parcel of such land which might have been owned by a delinquent tax debtor could be redeemed under the provisions of the Act of 1938.
The land which plaintiffs seek to recover is contained within the area of the Bohemia Spillway, which has been completed by the Orleans Levee Board under the mandate of the Legislature for more than seventeen years and the record informs us that more than one million dollars has been spent in the maintenance of this public necessity. If these plaintiffs were entitled to redeem the property before the construction of the spillway they are certainly not entitled to do so now.
Since this appeal was taken James F. Baker, one of the plaintiffs, has died and his executor, the El Paso National Bank of El Paso, Texas, has been substituted for him as party plaintiff.
For the reasons assigned the judgment appealed from is annulled, avoided and reversed and it is now ordered that there be judgment herein in favor of the defendant, the Orleans Levee Board, dismissing plaintiffs' suit at their cost.
Reversed.