No. 2087.—CITY OF BATON ROUGE *v.* T. J. BIRD, SHERIFF, et al.

In the dedication of lands for the public use, no particular form need be observed ; all that is required is the assent of the owner of the land, and the fact of its being used for the public purposes intended by the appropriation.

Where a dedication to public use of lands in squares, designated by metes and bounds is shown, and private individuals acquire the lands adjoining and surrounding it, with reference to the boundaries thereof, the lands so dedicated for the public use are out of commerce, and are not subject to individual or private ownership.

APPEAL from the Fifth District Court, parish of East Baton Rouge. *Posey, J. Burgess, Fuqua & Callahan,* for plaintiff and appellant, *A. M. Dunn* and *C. D. Favrot, Andrew S. Herron* and *Barrow & Pope,* for defendants and appellees.

LUDELING, C. J. In January, 1867, the plaintiff obtained an injunction to restrain the Sheriff from selling two squares of land situated in the city of Baton Rouge, designated in the pleadings as "Mexico Square" and "Government Landing." The petitioner alleges that the property belongs to the city of Baton Rouge, and that it has been in the possession of the city for more than twenty years without interruption. The petitioner then recites that the heirs of Elie Beauregard having instituted proceedings for a partition of the property, obtained an order to sell these squares for that purpose. The plaintiff denies that said heirs have any right, title or claim to the property, and prays that the city of Baton Rouge may be declared the owner of the two squares of ground, and be quieted in its possession thereof.

The defendants deny all the allegations contained in the petition, and especially that the city of Baton Rouge has any title to the property in its own right; they aver that if the city has any title, it is for the benefit of and interest for them. They allege that they are the true and lawful owners of the property, the sale whereof has been enjoined, and they pray that judgment may be rendered quieting them in their title and possession, and dissolving the injunction with damages.

The nature of the titles under which the parties respectively claim, is not stated in the pleadings.

From the evidence and the brief in this case, it appears that the claim of the city of Baton Rouge to the property in question is founded on a dedication of these squares to public use, by Elie Beauregard, the ancestor of the defendants, who now claim to be the owners of the two squares.

In the beginning of this century Elie Beauregard was in possession of a plantation adjoining the post of Baton Rouge, on which now stands the principal part of the city of Baton Rouge. He laid off a part of this tract into lots, streets and squares; he prepared a plan of the proposed city, and he published a notice of his intentions and plan.

This must have been done anterior to the acquisition of Louisiana by the United States, as the map contains sites (emplacements) for the location of "Government Palace," "Intendance," and "King's Store."

The map in evidence is admitted to be correct, and in exact accordance with the plan described in Beauregard's advertisement. This map, as well as the advertisement of the plan of the city, clearly shows that the squares in question were intended to be dedicated to public use.

On the map a space is designated as "Plaza de Mexico," and another space, fronting on the river, is designated as "Plaza de Colomb." In his advertisement Elie Beauregard says: "J'ajouterai seulement quelques explications relatif au plan actuel." * * * "Il y a sept places publique de différentes dimensions." Of Plaza de Mexico and Plaza des Florides he says: "Ces deux places, qui pourraint être, par la suite, ornées d'une fontaine dans leur milieu, auront 230 pieds de large sur 310 de longeur, ét communiqueront à la Grande Place par des rues de traverse."

Cousinard testified that he had known Mexico Square about thirty-eight or forty years—that it had never been held as private property, and was always considered as belonging to the city of Baton Rouge during that time. Government Landing, or Plaza de Colomb, is at the foot of Government street.

J. E. Elam testifies that he has known Mexico Square and Government Landing about twenty-five years; that neither of these places had ever been claimed or occupied as private property during that time. They were always considered and treated as public places. In 1865 Mexico Square was surveyed at the instance of the city; streets were laid off, and trees were planted on the square. What is now known as Government Landing is designated as Plaza de Colomb on the plan of the city, and the tradition relating to it is that it was intended as a public landing.

Has there been a dedication of the two squares to public use?

"There is no particular form or ceremony necessary in the dedication of land to public use. All that is required is the assent of the

owner of the land, and the fact of its being used for the public pur-
poses intended by the appropriation." 6 Peters 440; 3 An. 282.

In this case an actual dedication has been proved.

The consent of the owner is contained in the publication of his plan
of the city, made at least as early as 1803, in which he says:

"*Il y a sept places publiques* de diffcrentes dimensions." * * *
"Il y a aussi plusieurs autres emplacement destinés pour des.établisse-
mènt publique, tels que Palais du Gouvernemcnt, Maison de Ville, In-
tendance," etc.

The map of the city represents the two squares as *public places ;*
the spaces occupied by them are not divided into lots, and a name is
given to each square—Plaza de Mexico and Plaza de Colomb.

In the case of Beatty *v.* Kurts, 2 Peters 566, the Court held that there
was a dedication to public use when a lot of ground had been marked
out upon the original plan of an addition to Georgetown, "for the Lu-
theran Church," and had been used as a place of burial from the time
of dedication. In the case of the city of Cincinnati *v.* White's lessee,
6 Peters 182, the Court held that where a plan was made and approved
by all the proprietors, by which a space was set apart as a common for
the use and benefit of the town, and no lots were laid out on the land
so designated, it was dedicated to public use. The evidence in the
record shows that the property in question has always been regarded
as public places ; that they have never been assessed as private prop-
erty, and that they have been left unoccupied and open as commons
for the use of the public from the date of the dedication till 1865, when
trees were planted in the Plaza de Mexico.

Lots were bought and sold with reference to the plan of the founder
of the city. After being thus set apart for public use and enjoyed as
such for more than half a century, and private rights had been ac-
quired with reference to it, the original owner or his heirs cannot be
permitted to deny or revoke such dedication.

To do so would be a violation of good faith to the public, and to
those who have acquired private property with a view to the enjoyment
of the use thus publicly granted, as was well said in the case of the city
of Cincinnati *v.* White's lessee. Referring to the system of law under
which this case was decided, Judge Martin said: "I have looked in
vain, in the opinion of the court, for a reference or allusion to any
principle peculiar to the common law of England. It has appeared to
me that the case was determined on the first broad and general princi-
ples of law mentioned in the *Corpus juris civilis,* viz: *Honeste vivere,* to
act honestly, from which is deduced the maxim of *polliciti servare fidem,*
when we have made a promise to keep it; and the necessary corollary,
*turpe est fidem fallere,* it is shameful to disappoint expectations we have
authorized." 5 La. 170 and 219.

We are authorized, therefore, in holding that there was a dedication

to public use of the two squares in question, and that they are "*hors de commerce.*"

In the brief filed for the defendants, it is said "one of two things was intended by Beauregard—either that *he* intended *to erect the necessary buildings, and to lay off and beautify the grounds himself,* or *the city* was to do it. In the first place it would not be a dedication, and in the second the city would have to do the work intended before it could be invested with title." This is an error of fact. As has already been stated, Beauregard dedicated certain squares to public use—he designated them, in his advertisement, "*places publique,*" and on the map, "plazas." There were other *sites* (emplacements) for public buildings, which he designated in his plan, and which he expressly stated were to revert to him after the lapse of ten years, unless the buildings were erected within that period.

But the squares in question are not included among the sites (emplacements) which were to revert to him, for no buildings of any kind were to be put upon them; on the contrary they were to be open squares—"*plazas,*" "*places publique.*"

The facts in this case are different from those in the cases in 5 An. p. 8, 16 La. p. 705, and 14 An. 872. In these cases there was "no evidence of dedication *out* of the plan (map), and none *in* the plan *out* of the word Coliseum," etc. The court held that a Coliseum, market and church may be private property, and that merely writing these words across a square on a plan of a town was not proof of the intention of the owner to dedicate them to public uses. But in this case there cannot be room to doubt what Beauregard's intention was—his language, corroborated by the map in evidence, is unmistakable.

It is therefore ordered, adjudged and decreed that the judgment of the District Court be avoided and reversed, and that there be judgment in favor of the city of Baton Rouge, quieting it in its title and possession to Mexico Square and the Plaza de Colomb, and perpetuating the injunction issued in this case.

It is further ordered that the defendants pay the costs of both courts.