CORKRAN  OIL  AND  DEVELOPMENT  COMPANY  *v.*
ARNAUDET.

ERROR TO THE SUPREME COURT OF THE STATE OF LOUISIANA.

No. 22.   Argued October 24, 25, 1905.—Decided November 13, 1905.

A petition for rehearing to the Supreme Court of the State is too late to raise Federal questions in that court unless the petition is entertained and the point passed on.

Although title may be claimed in the state court under a Federal statute, if the decision of that court rests on a ground independent of that statute, and involving no Federal question the writ of error will be dismissed.

THIS was a petitory action commenced by the Corkran Oil and Development Company in the Eighteenth Judicial District Court for the parish of Acadia, Louisiana, on the sixth day of December, A. D. 1901, against Laurent Arnaudet and others, to recover possession of certain real property.  Plaintiff alleged that the land was claimed by Anthony Corkran during his lifetime, and by his heirs and legal representatives after his death, and that said claim, known as the "Corkran grant," was finally confirmed to Corkran's heirs and legal

representatives by an act of Congress of February 10, 1897, and a patent was issued to them in accordance with the act. That Corkran died in about the year 1819, and his succession was duly opened in St. Landry parish, where he resided, and where the property was situated, and that petitioner acquired title to said property from Corkran's heirs and descendants by acts of sale on various dates specified, said dates being subsequent to November 10, 1901. That neither Corkran and wife, nor any of his heirs, legal representatives or descendants, ever sold or disposed of their rights, title or interests in the land before the sales to petitioner, and petitioner was now the just, true and legal owner of the property. Notwithstanding which, defendants, without legal right or title and against petitioner's rights, had entered upon and now possessed and held said property and refused to deliver the same to petitioner as of right.

The act of Congress referred to is as follows (29 Stat. 517, c. 213):

"CHAP. 213. An act to quiet title and possession with respect to certain unconfirmed and located private land claims in the State of Louisiana.

"*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That all the right, title, and interest of the United States in and to the lands situate in the State of Louisiana, known as the located but unconfirmed private land claims therein, aggregating about eighty thousand acres, and specifically described in the list or tabular statement accompanying the report, dated February nineteenth, eighteen hundred and eighty, made by the surveyor general of Louisiana to the Commissioner of the General Land Office, under a resolution of the United States Senate of December second, eighteen hundred and seventy-nine, and which report and list were communicated to the Senate by the Secretary of the Interior on March eighth, eighteen hundred and eighty, as Senate Executive Document numbered one hundred and eleven, Forty-sixth Congress, second session, shall be, and the same are hereby, directed to be granted, released, and re-

linquished by the United States, in fee simple, to the respective owners of the equitable titles thereto, and to their respective heirs and assigns forever, as fully and completely, in every respect whatever, as could be done by patents issued therefor according to law.

"SEC. 2. That nothing contained in this act shall in any manner abridge, divest, impair, injure, or prejudice any valid right, title, or interest of any person or persons in or to any portion or part of the lands mentioned in said first section, the true intent of this act being to relinquish and abandon, grant, give, and concede any and all right, interest, and estate, in law or equity, which the United States is or is supposed to be entitled to in said lands, in favor of all persons, estates, firms, or corporations who would be the true and lawful owners of the same under the laws of Louisiana, including the laws of prescription, in the absence of the said interest and estate of the United States.

"SEC. 3. That the Department of the Interior shall cause patents to issue for such lands, and such patents shall issue in the name of the original claimant as appears in the list or schedule aforesaid, and when issued shall be held to be for the use and benefit of the true and lawful owners as provided in sections one and two of this act."

The patent is as follows:

"The United States of America to all to whom these presents shall come,

" Greeting:

"Whereas, by the act of Congress approved February 10th, A. D. one thousand eight hundred and ninety-seven, entitled 'An act to quiet title and possession with respect to certain unconfirmed and located private land claims in the State of Louisiana,' it is provided—

[Here follows the act of February 10, 1897, in full.]

"And whereas, the private land claim of Anthony Corkran, appears in the list of claims embraced in the aforesaid Senate Executive Document numbered one hundred and eleven.

and, therefore, stands confirmed and entitled to (a patent under the terms of the) act of Congress hereinbefore recited.

"And whereas, the aforesaid claim has been regularly surveyed as section forty-seven in township nine, south of range two west in the southwestern district of Louisiana, containing five hundred and eighty acres and ninety hundredths of an acre as appears by the plat and descriptive notes thereof on file in the General Land Office of the United States duly approved by Chas. F. Dickinson, U. S. surveyor general for the State of Louisiana, on the thirtieth day of October, one thousand eight hundred and ninety-seven, which said plat and descriptive note are herein inserted and made a part of these presents, and are in the words and figures following, to wit:

[Plat and descriptive note.]

"Now know ye, that the United States of America, in consideration of the premises herein set forth, and in conformity with the provisions contained in sections two and three of the aforesaid act of the tenth day of February, one thousand and eight hundred and ninety-seven, has given and granted and by these presents does give and grant unto the said Anthony Corkran and to his heirs and assigns the tract of land embraced and described in the foregoing survey.

"To have and to hold the said tract of land with the appurtenances unto the said Anthony Corkran his heirs, assigns and successors in interest forever."

Dated November 22, 1897.

The defendants filed exceptions, and also answered, admitting that Anthony Corkran, or Cochran, claimed the land in question, and that it was patented to Corkran and his heirs under and according to the act of February 10, 1897, which was fully set forth in the preamble to the patent; and they asserted that the true intent of said act of Congress fully appeared from the second section of the act, and that "under and by virtue of the laws of Louisiana, all the right, title and interest of Anthony Corkran and his heirs in and to the land claimed by plaintiff, and patented as aforesaid to Anthony

Corkran and his heirs, had been divested long prior to the issuance of the aforesaid patent, and was held in full and complete ownership long prior to the date of said patent by the authors of defendants, and by defendants, under valid and perfect titles, by and under the laws of Louisiana, including the laws of prescription."

That the authors of defendants and defendants themselves had acquired by true and valid title all the right, title, interest and estate at law or in equity in the lands patented to Anthony Corkran and his heirs prior to the issue of the patent, by virtue of the laws of Louisiana providing for the sale of all lands situated within its borders for non-payment of taxes, by mesne conveyances of said lands from the purchaser at a tax sale December 2, 1882, for unpaid taxes assessed on said realty for the year 1881; and that since said tax sale the real estate in question has always been in the possession of the purchaser at that sale and the authors of defendants and the defendants themselves, and been occupied by them as owners in undisturbed and quiet possession. Defendants further pleaded in bar of the action and in support of their title "the prescription of three, five and ten years, and that the prescription of three years established by article 233 of the Louisiana constitution of 1898 is a complete bar to this action." Defendants also asserted that they had paid taxes on said property during the time of their possession and had placed thereon valuable improvements, amounting in the aggregate to upwards of twenty thousand dollars. The trial court decided the case on the merits, and found that defendants claimed title to the land in controversy through Henry Gellert, who purchased the land at a tax sale in 1882, for taxes assessed against said land in the name of Anthony Corkran or his heirs, and set forth the facts on which the court held that the land in controversy was subject to such assessment and sale. The trial court held that the defendants were protected by the prescription of three years, provided in article 233 of the constitution of 1898, as well as the prescription of three and five years pleaded,

and entered judgment for defendants. On appeal, the judgment was affirmed by the Supreme Court of Louisiana, the case being reported 111 Louisiana, 563.

That court found as facts that under the act of February 10, 1897, a patent issued on November 22, 1897, to Anthony Corkran and his heirs and assigns for the lands in controversy in this suit; that there was not in the record any previous application for the land or entry thereof by Anthony Corkran, but that the records of the Land Department showed that in 1816 the land was surveyed by Deputy United States Surveyor Aborn, by virtue of "an order from the principle deputy surveyor of the western district, State of Louisiana, and in conformity with a certificate, B No. 1151, from the board of commissioners of the said western district" for Anthony Corkran; that this map and *procès verbal* were approved May 21, 1817, by Gideon Fritz, principal deputy surveyor; that the land was again surveyed in 1875 by P. A. Thibodaux, deputy surveyor, and across his map is written "Claimed by Anthony Corkran—no confirmation found;" that the officers of the United States Land Office refused to dispose of the land under the general land laws of the United States, and finally Congress passed the act of 1897; that on December 27, 1882, the tax collector of the parish of St. Landry executed a deed in favor of Henry Gellert, which was recorded on the same day in the conveyance book of that parish, reciting that on the second day of December, 1882, he had adjudicated to said Gellert at public sale the land in controversy, "being the property of Anthony Corkran or his heirs, as per assessment roll of the State of Louisiana of the year 1881, to satisfy a debt due the said State for the unpaid taxes" for said year; and that "the present defendants are admittedly in possession of the land patented to Anthony Corkran or his heirs." And the court held "that the land in controversy was subject to taxation and sale for non-payment of taxes," and that the objection that it was not so subject was untenable.

As to the objection that the tax deed was invalid because

of indefiniteness of description the court held that the presumption, after the great lapse of time, was that the assessment roll to which the deed referred was sufficiently precise and definite and was correct and regular, and that defendants were justified in relying on the presumption of regularity in the absence of actual attack upon the tax proceedings.

The court held further that the argument of plaintiff that Corkran and his heirs were without right of any kind in the land in controversy would leave the Government, so far as they were concerned, free to make such disposition of said land as it might think proper, for the result of such argument would be to throw them out of court for want of interest in the subject-matter, their rights resting exclusively upon the Government's acts. The court said:

"If Corkran or his heirs had no claim of character such as could be enforced or legally entitled to have been recognized, the Government could impose such conditions to the voluntary recognition of the same as it thought proper, and the parties claiming under the act of recognition would be forced to accept them or nothing.

"There is no one before the court claiming rights under the Government adverse to the rights acquired by the parties under the Government, and whatever rights the Government itself might have had, or grounds for objection, it had expressly renounced and waived, not only in favor and behalf of Anthony Corkran or his heirs, but of any other person who would have had legal rights had the Government itself had none when those rights attached. This renunciation or waiver could as legally and properly have been made by the Government in behalf and in favor of this class of persons as it could have been made in favor of the Corkran heirs, and that this renunciation and waiver was intended to cover and protect the rights of the latter class appears on the face of the act of Congress. . . ."

"Grant that the act of Congress was an original grant to the Corkran heirs as of date of its passage; it was none the less

a grant coupled with conditions and charges in favor of third parties, and the Corkran heirs were forced to accept the grant with the conditions attached. They could not accept it as far as it might be favorable to them, and repudiate its effect as to other parties. . . . There are no persons claiming adverse rights, and, the Government having expressly renounced and waived her own, plaintiff cannot, through her, urge them."

The court pointed out that counsel, notwithstanding the provisions of article 233 of the constitution of 1898 as to the prescription of three years barring an action seeking to annul a tax title, had brought a direct petitory action against defendants in actual possession of the property which they claimed. The court continued:

"On the trial of the case defendants established that they and their authors had been in possession as they had alleged; . . ."

"Defendants evidently relied in their pleadings and proof upon article 233 of the constitution, upon the strength of the defensive position which they would hold, when they should have shown an actual corporeal possession of the property claimed by themselves and their authors for nineteen or twenty years as owners, and have traced their rights back to a tax sale.

". . . Defendants do not plead prescription against the petitory, but upon an incidentally raised action of nullity. The sale referred to was strictly a sale for taxes. The property was proceeded against as property belonging to Anthony Corkran or his heirs, and, as matters have now shaped themselves, it must be taken to have belonged to them at the time of the sale. The defendants and their authors not only had corporeal possession prior to 1898, but it extended before the institution of this suit for three years after the adoption of the constitution of 1898 so that this possession was itself protected permanently from attack by plaintiff by article 233, independently of the merits of the tax title . . . even

had the property at the time of the tax sale not been segregated from the public domain, and even though their title to the property had been void. . . . This permanent protection to possession is equivalent to legal ownership. *Pillow v. Roberts*, 13 How. 472. . . . Plaintiff had certainly the right even on its own theory to attack defendants' tax title after February, 1897; having failed to institute its proceeding within the three years from the date of the adoption of the constitution, their right of action was forever barred. *In re Lockhart*, 109 Louisiana, 740.

"We think the defendants have sustained their defense under both of the prescriptions invoked—that of ten years *acquirendi causa*, and that of three years, under article 233 of the constitution."

*Mr. Kenneth Baillio*, with whom *Mr. Hampden Story* and *Mr. E. B. Dubuisson* were on the brief, for plaintiff in error:

As to the jurisdiction of this court.

Both parties claim title under a Federal statute, under which the validity of the titles set up is made to depend upon a correct interpretation of the laws of Louisiana, *ergo* that interpretation is a Federal question. This necessarily follows from the very language of § 709, Rev. Stat. The right granted to this court, under that section, to reëxamine and reverse or affirm a final judgment of the highest court of a State, where any title, right, privilege or immunity is set up under a statute of the United States, and the decision is against such title, right, privilege or immunity, is not confined to a review of the state court's interpretation of the statute under which it was claimed, but extends also to a review of the state court's decision on the validity of the title set up. *Smith v. Maryland*, 6 Cranch, 286; *Martin v. Hunter*, 1 Wheat. 359.

*Mr. Donelson Caffery, Jr.*, and *Mr. Gilbert L. Dupré*, with whom *Mr. Donelson Caffery, Mr. J. Sully Martel* and *Mr. P. J. Chappin* were on the brief, for defendants in error:

As to the jurisdiction.

Before it can be said that any right or title under a statute of the United States has been denied, it is necessary to overcome the judgment of the state court upon a question of local or state law.  To do this, the Supreme Court of the United States has no jurisdiction under § 25 of the judiciary act. *Poppe* v. *Langford,* 104 U. S. 770; *Johnson* v. *Risk,* 137 U. S. 309; *Lyttle* v. *Arkansas,* 22 How. 193; *Telluride Power Co.* v. *R. G. Western R. R.,* 175 U. S. 639; *S. C.,* 187 U. S. 569; *Dibble* v. *Land Co.,* 163 U. S. 63.

The question here is not one of the correctness of the state decision brought up by the writ, but of jurisdiction in this court to review the case in the absence of a Federal question.  The cases cited by plaintiff in error are not applicable.

The Federal question must be considered as not decided when a question of state law intervenes, and is decisive of the case.  To give jurisdiction, the Federal question must be necessary to the judgment or decree complained of.  *Detroit R. R.* v. *Guithard,* 114 U. S. 133; *Choteau* v. *Gibson,* 111 U. S. 200; *State* v. *Board of Liquidation,* 98 U. S. 140; *McManus* v. *O'Sullivan,* 91 U. S. 578; *Murdock* v. *Memphis,* 20 Wall. 590; *Adams* v. *Burlington R. R.,* 112 U. S. 127; *Chapman* v. *Goodwin,* 123 U. S. 548; *Brooks* v. *Missouri,* 124 U. S. 400; *Water Works* v. *Sugar Co.,* 125 U. S. 29; *DeSausure* v. *Gaillard,* 127 U. S. 234; *Israel* v. *Arthur,* 152 U. S. 262; *Wailes* v. *Smith,* 157 U. S. 276; *Hale* v. *Akers,* 132 U. S. 565; *San Francisco* v. *Strell,* 133 U. S. 567.

*Mr. Frederic D. McKenney, Mr. John Spalding Flannery* and *Mr. James L. Autry* also for defendants in error, submitted on the question of jurisdiction:

Whether the conclusion reached was correct depends entirely upon the proper construction and application of the provisions of the state constitution to the facts found.  It does not in anywise depend upon the Constitution or laws or authority of the United States.  A writ of error to review such

a judgment will not lie. *Chapman* v. *Crane*, 123 U. S. 540; *Wells* v. *Goodnow*, 150 U. S. 84. .

Where the decision of the state Supreme Court rests on an independent ground of law, not involving any Federal question, this court has no jurisdiction. *Water Works Co.* v. *Sugar Co.*, 125 U. S. 18.

The ground of the decision in the state courts was independent of any claim of right under the statute of 1897, and its adjudication involved no Federal question and the writ of error must be dismissed. *Eustis* v. *Bolles*, 150 U. S. 361; *Carothers* v. *Mayer*, 164 U. S. 325; *Moran* v. *Horsky*, 178 U. S. 205.

If the accident that either one or both of the parties to the controversy claimed title under the United States was to be considered as sufficient to bring it within the jurisdiction of this court, then every controversy involving the title to such lands, whether it involved merely the inheritance, partition, devise, or sale of it, would with equal propriety be subject to examination by this court. *Moreland* v. *Page*, 20 How. 522; *Carpenter* v. *Williams*, 9 Wall. 785; *Martin* v. *Marks*, 97 U. S. 345.

The mere averment of the existence of a Federal question is not sufficient to give this court jurisdiction; a real and not a fictitious Federal question is essential to give this court jurisdiction over the judgment of state courts, and when it appears that the alleged Federal question upon which jurisdiction is invoked is wholly without foundation the writ of error will be dismissed. *Sawyer* v. *Piper*, 189 U. S. 154, 156, 157.

The attempt to assert a Federal question for the first time in a petition for rehearing is too late unless it appears that the court entertained the petition and disposed of the question. *Fullerton* v. *Texas*, 196 U. S. 192.

MR. CHIEF JUSTICE FULLER, having made the foregoing statement, delivered the opinion of the court.

In the progress of the case in the trial court no Federal

question as such was specifically raised, but when it reached the Supreme Court it was assigned for error that if article 233 of the constitution of Louisiana of 1898 had the effect of validating the tax sale to Henry Gellert it was in violation of Article 5 of the amendments to the Constitution of the United States. Counsel for plaintiff in error admit that this was a misreference, but contend that it was corrected by the petition for rehearing filed after judgment, which alleged a violation of the Fourteenth Amendment, but this came too late, unless the petition was entertained and the point passed on. *Fullerton v. Texas,* 196 U. S. 192. And this petition was denied without any observations.

The petition for the writ of error from this court and the assignment of errors herein set up Federal questions, but they form no part of the record on which to determine whether a Federal question was decided by the state court. *Leeper v. Texas,* 139 U. S. 462; *Chapin v. Fye,* 179 U. S. 127. And counsel further state "that in so far as the errors assigned are said to have violated the due process of law provision of the Fourteenth Amendment to the Constitution of the United States, they are not pressed."

If it be conceded that plaintiff specially set up and claimed title to the land in controversy under the act of Congress of February 10, 1897, that would not be sufficient to give jurisdiction unless the state courts had decided against such title. But that was not the decision here. What was decided was that the prescribed period having elapsed, article 233 of the Louisiana constitution operated as the equivalent of legal title through the tax deed. The correctness of this conclusion depended on the proper construction and application of the provisions of the state constitution on the facts found, and not on the Constitution or laws of the United States.

The state constitution of 1898 was adopted and went into effect May 12, 1898. La. Const. 1898, p. 88. Article 233 provided:

"No sale of property for taxes shall be set aside for any

cause, except on proof of dual assessment, or of payment of the taxes for which the property was sold prior to the date of sale, unless the proceeding to annul is instituted . . . within three years from the adoption of this constitution, as to sales already made. . . ." Constitution 1898, p. 61.

The record showed that defendants and their authors had been, since 1882, in quiet, peaceable possession of the property in question under a tax title, the validity of which had not been impeached by any direct proceeding; that more than three years had elapsed before the institution of the present action since the adoption of the constitution (and more than that since the passage of the act of February 10, 1897, and the issue of the patent, November 22, 1897), and that at any time within such three years plaintiff or its authors might have instituted suit against defendants to annul the sale.

And the decision of the state Supreme Court that, in these circumstances, article 233 made good defendants' title rested on a ground independent of the act of 1897, and involved no Federal question.

*Writ of error dismissed.*