This is an action of nullity in which the plaintiff, Louisiana Highway Commission, seeks to have annulled and set aside that certain judgment rendered on default by the District Court of Rapides Parish on June 18, 1940, in favor of defendants herein and against the commission, in suit styled "Sidney Raxsdale et al vs. Highway Commission", on the docket of said court; and which judgment was affirmed by this court on January 13, 1942.1 So.2d 342, 344. The judgment in part reads as follows:
"Ordered, Adjudged and Decreed that there be judgment herein in favor of plaintiffs, Sidney Raxsdale, Mary M. Raxsdale, Frank M. Raxsdale, and Edward M. Raxsdale, through his tutor, Sidney Raxsdale, and against the defendant, Louisiana Highway Commission, in the full sum of One Thousand Five Hundred ($1,500.00) Dollars, together with interest thereon at the rate of Five Percent per annum from May 24, 1940, until paid, together with all costs of these proceedings.
"It is further ordered, adjudged and decreed that the temporary injunction granted herein by judgment read and signed on June 11, 1940, be and the same hereby is made permanent and perpetuated and made absolute, and accordingly the Louisiana Highway Commission is hereby restrained, prohibited and enjoined from making or allowing any further trespass upon the property of plaintiffs situated in Square 29 of the Upper Suburbs of the City of Alexandria, La., until such time as the moneyed portion of this judgment is by it paid in full."
In the former suit plaintiffs alleged ownership and possession of a narrow strip of land 49.6 feet long on the east side of square 29, adjacent to the west side of Third street, in the City of Alexandria, and that the highway commission had trespassed thereon and had appropriated it for highway purposes. Damages in the sum of one thousand five hundred ($1,500) dollars were sued for.
It is alleged in the present suit that in support of the allegations of ownership in the former suit, plaintiffs introduced and filed in evidence a plat or drawing which purported to delineate the land owned by them in said square 29; that said plat did actually show that all of said 49.6 feet frontage was owned by them; that on trial of the suit three witnesses testified "To the value of plaintiffs' property as alleged in their petition and as shown on said plat."
The gravamen of this suit to annul is that said plat did not correctly reflect the ownership of said 49.6 feet frontage, and that the testimony based thereon and to prove that the plaintiffs did own the whole of said frontage, was false and untrue because on May 30, 1868, Francis M. Raxsdale, defendants' father, sold and conveyed to the Town of Alexandria a fractional part of said square 29, which fronts 28 feet on Third street, leaving Raxsdale the owner of only 21.6 feet frontage; that deed to the town was recorded on date of its execution in Conveyance Book "B", page 186, of the records of Rapides Parish; that the town has never parted with its ownership of said lot but that its ownership thereof was not discovered by plaintiff until after the rendition of the judgment herein attacked.
Defendants excepted to the petition as disclosing neither a cause nor a right of action. The exceptions were overruled. They are reurged here. Answering, they pleaded that Francis M. Raxsdale and Mary M. Raxsdale, their father and mother, while living, and they, the defendants, since the death of said parents, have had the peaceable, public, continuous and undisturbed *Page 633 
possession of all of said square 29, excepting a strip 50 feet wide off of the south side thereof along Monroe Street. They deny that the existence and registry of the deed from Francis M. Raxsdale to the Town of Alexandria was unknown to plaintiff, but, on the contrary, charge that it did have knowledge thereof prior to the trial of said original suit; and, at length, they narrate the facts constituting such knowledge; that such knowledge was acquired by plaintiff in ample time to have urged it as a defense in said original suit; that within the legal delay plaintiff herein applied for a new trial and/or rehearing in which the same matters of fact, as are now alleged upon, were urged as reason for granting the sought for relief, but voluntarily withdrew the same prior to being passed upon; that having failed to timely urge said defense, the same was thereby waived and plaintiff is now estopped to invoke the same as cause for nullifying the judgment.
Defendants further aver that the land sought to be and which was actually conveyed by Raxsdale to the Town of Alexandria was situated in a different part of said square 29 than that claimed by plaintiff that the land in reality conveyed by said deed has been occupied by the Bayou Rapides levee and the Texas Pacific Railroad for over fifty years. In the alternative, defendants specially plead and urge the prescription of thirty years' acquirendi causa.
There was judgment for plaintiff as prayed for and defendants appealed.
The pleadings raise several questions of law and of fact. The important questions of fact are these: (1) The identity of the lot sold to the Town of Alexandria by Francis M. Raxsdale; (2) the alleged thirty years' possession by defendants and their parents of the lot plaintiff contends was conveyed in said act of sale.
The questions of law presented are these: (1) The right of plaintiff, in view of the record facts, to maintain an action of nullity; (2) estoppel and waiver; (3) the plea of prescription of thirty years; (4) the status of the town's ownership of said lot; that is, whether alienable or not.
The testimony, as a whole, is sufficient in scope to warrant a decision upon all the questions tendered by the pleadings; but as we have reached the conclusion that the plea of prescription is tenable and well founded, it becomes unnecessary to discuss and pass upon other controverted issues and questions except those involving the identity of the lot and whether it is susceptible to acquisition through adverse possession. Judgment disposing of these questions will put an end to the controversy.
The lower court experienced no difficulty in arriving at the conclusion that the lot sold by Raxsdale to the Town of Alexandria fronted 28 feet on Third Street, as contended by plaintiff, and a close study of the maps and deeds in the record has led us to the same conclusion. This 28 feet frontage formed the base of the conveyed lot. It is of triangular shape and extends westerly into said square 29, having an altitude of 78.13 feet and a hypothenuse of 83 feet. It contains, according to calculation, 1,094 square feet.
The lower court also found that defendants and their parents had been in the actual physical and undisturbed possession of this triangular shaped lot along with adjacent portions of square 29, as owners, for over thirty years prior to filing of the other suit. We concur in this finding. The testimony really establishes that such possession has extended back for over one-half a century; in fact, there is no testimony whatever to even indicate that the lot was at any time out of the possession of the Raxsdales since 1868. Therefore, said testimony does not in the faintest manner show that the City of Alexandria ever exercised jurisdiction over or had possession of the lot. It is made quite certain that the lot never formed any part of a street or highway or other public place in the city and likewise in no other manner did the city use or dedicate it to public purposes. Plaintiff, however, does not contend that this was done.
The deed from Raxsdale to the Town of Alexandria is of regular form and contents. The description of the lot conveyed is followed by this clause: "and purchased as a street of said town of Alexandria." The recited price is fifty dollars ($50) cash. The act was signed by the grantor and by the then mayor of the town. There is no declaration in the act that the purchase was made under authority of the town council or board of aldermen. Plaintiff relies upon this quoted clause as sufficient to characterize the property as being a public acquisition and, therefore, not subject to acquisition by others through adverse possession. It does not contend that the lot was ever dedicated to public use beyond the *Page 634 
import of the language of said clause, nor that it became public property otherwise than through the effect thereof. The shape of the lot precludes the possibility that it, within itself, could have constituted a street. The most that can be said on the subject is that the town possibly had in mind the projection of a street on westerly through the square to Fourth Street, but it is certain this was not done.
It being unquestioned that defendants and their parents possessed as owners the entirety of the lot sold by the father to the city for more than thirty years, there remains but one other question to decide and that is whether the status of the property was such that ownership of it could be acquired and the city could lose the same by such adverse possession.
"Prescription runs against all persons, unless they are included in some exception established by law." R.C.C. art. 3521.
"Prescription shall not run against the State in any civil matter, unless otherwise provided in this Constitution or expressly by law." Article XIX, Section 16, Constitution.
The fact that a municipal corporation is a creature of and in some respects the agent of the state in the exercise of governmental functions, does not elevate such a corporation to the same status as the state enjoys with respect to the running of prescription against it.
It is well settled that if property owned by municipal corporations enjoys the status of locus publicus it is considered unalienable and, therefore, may not be privately acquired by adverse possession; but if not of that status the laws of prescription are applicable. The leading case dealing with these questions is that of City of New Orleans et al. v. Salmen Brick Lumber Co., 135 La. 828 et seq., 66 So. 237, 248. Justice O'Niell was the organ of the court on rehearing. With characteristic clarity and cogency he exhaustively discusses these questions and in so doing inter alia said:
"The Constitution does not provide, nor does any statute of this state provide, that prescription shall not run against a municipal corporation. Therefore, paraphrasing article 3521, R.C.C., it logically follows that prescription runs against municipal corporations unless they are included in some exception established by law. The only exception established by law in favor of municipal corporations has reference to the status of their property or the nature of their title. Property, to the use of which all the inhabitants of a city, and even strangers, are entitled in common, such as the streets, the public walks, quays, and other public places, are not subject to private ownership; and, as prescription is one of the means of acquiring title to property, it follows that public places cannot be acquired by prescription.
"`Things which belong in common to the inhabitants of cities and other places, are of two kinds:
"`Common property, to the use of which all the inhabitants of a city or other place, and even strangers, are entitled in common; such as the streets, the public walks, the quays.
"`And common property which, though it belongs to the corporation, is not for the common use of all the inhabitants of the place, but may be employed for their advantage by the administrators of its revenues.' R.C.C. art. 458.
"The above-quoted article appears in the chapter of the Code, Of the Division of Things. Turning to the chapter, Of Things Considered in their Relation to Those who Possess Them, we find:
"`Things, in their relation to those who possess or enjoy them, are divided into two classes; those which are not susceptible of ownership and those which are.' R.C.C. art. 481.
"`Among those which are not susceptible of ownership, there are some which can never become the object of it; as things in common, of which all men have the enjoyment and use.
"`There are things, on the contrary, which, though naturally susceptible of ownership, may lose this quality in consequence of their being applied to some public purpose, incompatible with private ownership; but which resume this quality as soon as they cease to be applied to that purpose; such as the high roads, streets and public places.' R.C.C. art. 482.
"The distinction which our Civil Code makes between that class of property owned by municipal corporations, which loses the quality of being susceptible to private ownership when applied to some public purpose, but which resumes that quality as soon as it ceases to be applied to a public purpose, and that class of property owned by municipal corporations which is not actually used by the inhabitants of the place *Page 635 
but which may be employed for their advantage by the administrators of its revenues, is observed by Mr. Dillon, in his work on Municipal Corporations:
"`Although municipal corporations are public agencies, exercising on behalf of the state public duties, yet they also exercise and acquire what the courts call rights in a private and proprietary capacity rather than in a public and governmental capacity. Such corporations are not exempt from the operation of limitation statutes in cases wherein arise questions involving property or contracts which do not pertain to the authority of the state which is exercised through them but pertain to the private and contractual rights of the municipality, and such statutes run in favor of and against these corporations with respect to these private and proprietary rights and obligations in the same manner and to the same extent as against natural persons.' Volume 3, p. 1887.
"`While there is a conflict of opinion as to just how far the rule exempting the sovereign from the operation of the statute should be applied to municipal and quasi municipal corporations, the cases are generally agreed that the rule is not to be applied to such corporations to the full extent that it is applied in favor of the state.
"`Thus, almost if not quite all the cases agree in holding that, where property is held by a municipal corporation as a private owner, it is subject to the operation of the statute, and title thereto may be acquired by adverse possession.' 1 Cyc. 1117."
Jurisprudence of the state pertinent to the questions was cited and discussed. The syllabus which correctly reflects the court's holdings on the subject, in part, read: "The only exception established by law in favor of municipal corporations is that municipal property which is dedicated to a public use is not alienable, not subject to private ownership, and therefore cannot be acquired by prescription."
It is made clear by the first paragraph of Article 482 of the R.C.C. that things in common, the enjoyment of which all persons are entitled to share, may never become susceptible of (private) ownership. And the second paragraph of the article makes it equally certain that there are things naturally susceptible of ownership which may lose this quality when applied to some public purpose incompatible with private ownership, and further says: "but which resume this quality as soon as they cease to be applied to that purpose." High roads, streets and public places are mentioned as things to which this paragraph has application.
If property once dedicated to public use and used by the public, such as highways, streets and parks is permanently abandoned or closed to such use thereby becomes susceptible of private ownership by any method recognized by law a fortiori, does property once owned by a municipality but which was never dedicated to public use nor used by the public for over a half century and has been, to all intents and purposes, abandoned for public use, take on the character of alienability and becomes subject to ownership by any method (including prescription) fixed by law? And these are the facts of the case before us.
The fact that the adverse possessors have been the vendor of the city and his heirs does not alter the situation nor unfavorably affect the running of prescription in their favor. Good faith is unnecessary to the creation of ownership through possession of thirty years.
In Succession of Zebriska, 119 La. 1076, 44 So. 893, it was held that the vendor is not precluded by his warranty from seeking to re-acquire by prescription property he has sold. The same was held in Roe v. Bundy's Heirs, 45 La.Ann. 398, 12 So. 759.
For the reasons herein assigned the judgment appealed from is annulled, avoided and set aside, and there is now judgment in favor of defendants Sidney M. Raxsdale, Mary M. Raxsdale, Frank M. Raxsdale, majors, and Edward M. Raxsdale, minor, and against the plaintiff, Louisiana Highway Commission, sustaining the plea of prescription of thirty years herein filed; and, accordingly, said defendants are hereby recognized as the owners in indivision of the strip of land hereinabove described. It is further ordered, adjudged and decreed that this suit be dismissed and the demands of plaintiff rejected at its cost. *Page 636