546 So.2d 848 (1989)
Phillips C. WITTER
v.
The CITY OF BATON ROUGE, etc., et al.
No. 87 CA 1146.
Court of Appeal of Louisiana, First Circuit.
June 20, 1989.
*850 Louis S. Quinn, Jr., Baton Rouge, and Judy Y. Barrasso, New Orleans, for Phillips C. Witter.
Fred H. Belcher, Jr., and C. Michael Futrell, William Lowery, Baton Rouge, for City of Baton Rouge, Parish of EBR, et al.
Before SHORTESS, SAVOIE and LeBLANC, JJ.
SAVOIE, Judge.
This is a possessory action brought by Phillips C. Witter against the City of Baton Rouge, the Parish of East Baton Rouge and certain City-Parish officers. Mr. Witter sought a judgment maintaining his possession of certain property located in the area of Baton Rouge known as Beauregard Town and ordering defendants to file any adverse claims of ownership within sixty days. The property in dispute fronts on the Mississippi River, and is bounded on the east by Natchez Street, on the south by South Boulevard, on the north by France Street, and on the west by the said river.
At a trial on the merits, the City contended that Mr. Witter was not entitled to a judgment of possession because the City allegedly owns the Witter property by a dedication in 1806 from Elie Beauregard, or by a grant from the U.S. Congress to the City in 1860, or because part of the property encompasses the riverbank and levee.
The trial court entered judgment in favor of Mr. Witter on May 12, 1987. Finding that the evidence "clearly shows that plaintiff and his family have corporeally possessed the disputed property since 1906" and that the other elements of a possessory action as set forth in Article 3658 of the Louisiana Code of Civil Procedure were established, the trial court concluded that Mr. Witter clearly had satisfied his burden of proof.
The trial court then noted that because the City is a public body, it has another defensethat the disputed property is public in nature and insusceptible to private possession.
The trial court rejected the City's defense that the Witter property was public in nature for two reasons. First, after considering the City's evidence, including the ancient case of City of Baton Rouge v. Bird, 21 La.Ann. 244 (1869) which quieted title to the Plaza de Colomb in favor of the City of Baton Rouge based on a dedication by Beauregard, the trial court found that the Witter property was probably not part of the Plaza de Colomb at issue in Bird. The trial court reasoned that since the Bird court "continually referred to Plaza de Colomb as a square.... [I]t is rational to assume that the square is an area bounded east by Natchez Street, west by the river, north by Espagnola Street, and south by Fracesa Street."[1] The Plaza did not encompass the Witter property. Rather, the sites for markets and a House of Kings adjacent to the Plaza de Colomb which were to revert to Beauregard encompassed the Witter property.
Second, the trial court concluded that even if the market areas and House of Kings area comprising the Witter property were part of the Plaza de Colomb, the Witter property, nevertheless, was a private thing of the City, susceptible to private possession. In reaching its decision, the trial court relied upon Todd v. State of Louisiana, 474 So.2d 430 (La.1985) which held that a possessory action may be maintained against the state where the object of possession is a private rather than a public thing. The trial court concluded that included among private things susceptible of private possession are the market buildings, houses, and the land beneath them *851 which comprise the Witter property. In finding that the Witter property was a private thing, even if owned by the City, the trial court in effect rejected the City's arguments that the property is public in nature.
The trial court concluded that its decision was strengthened by the fact that Mr. Witter and his family have possessed the property since 1906 with the knowledge and acquiescence of the City. The trial court explained:
The decision herein is strengthened by the fact that plaintiff and members of his family before him have possessed the property since 1906. The Baton Rouge Lumber Company, Ltd., was a well known and well established business in Baton Rouge. Prior to 1906, the property was used as a lumber business for many years. Baton Rouge knew this and accepted this.
The City has suspensively appealed from this judgment assigning three specifications of error all of which allege that the trial court erred in not ruling that the Witter property is a public thing insusceptible to private ownership or possession by a private person.
The City argues in brief that Mr. Witter, in addition to establishing the requisite elements for a possessory action, had the burden of proving that the land he claims to have possessed is a private thing. The City argues that an additional burden of proof is imposed upon a plaintiff bringing a possessory action against a municipality to prove that the disputed property is not public property owned by the municipality. Contrary to the City's contention, proof that the property at issue is a public thing owned by the City is a defense, proof of which rests upon the defendant in a possessory action. Todd, 474 So.2d at 436; Brasseaux v. Ducote, 6 So.2d 769, 770 (La. App. 1st Cir.1942).
This court recognized this rule in Brasseaux v. Ducote, 6 So.2d 770 where the defendant contended that the disputed property was public property. Finding that plaintiff had established all of the requirements for a possessory action pursuant to the predecessor of Article 3658, the court entered judgment for plaintiff. In so holding, the court recognized that the question of whether the property was public property and therefore insusceptible to possession by a private person was a defense, proof of which rested upon the defendant. Id. at 770.
The Louisiana Supreme Court recently reiterated this rule in Todd v. State of Louisiana, 456 So.2d 1340, 1350 (La.1983), which decision was adopted on second rehearing, Todd v. State of Louisiana, 474 So.2d 430 (La.1985). The court held:
[R]eferring to land as `public' at the outset of a possessory action in order to argue that it is inalienable, and may not be acquired by prescription, and thus cannot be the object of a possessory action, presupposes a state of affairs which may well not be the case. It presupposes that the property in question is owned by the state.
* * * * * *
Such proof of ownership is foreign to the limited issues in a possessory action. A party bringing a possessory action need not allege or prove that the property is not owned by the defendant, nor that he has title to the land; nor must the Court address the matter of ownership in order to rule in a possessory action.
The court further stated:
The state, of course, will defeat the possessory action if they can show that the disputed property is `public,' be it by nature or by use.
456 So.2d at 1350. (Emphasis ours). (Citations omitted). On second rehearing, the court further commented on the burden of proof:
[T]he burden of proof would be on the adverse party to the plaintiff in possession (namely the state) to make out its title, just as is the case in the possessory action.
474 So.2d at 436.
In consideration of the above stated law, our initial review is focused on whether Mr. Witter established the requisite elements *852 for a possessory action. The elements of a possessory action are expressly set forth in Article 3658 of the Louisiana Code of Civil Procedure. It provides that the possessor need only allege and prove that:
(1) He had possession of the immovable property or real right therein at the time the disturbance occurred;
(2) He and his ancestors in title had such possession quietly and without interruption for more than a year immediately prior to the disturbance, unless evicted by force or fraud;
(3) The disturbance was one in fact or in law, as defined in Article 3659; and
(4) The possessory action was instituted within a year of the disturbance.
Louisiana Code of Civil Procedure article 3660 states that "[a] person is in possession of immovable property ... when he has the corporeal possession thereof,...." Article 3425 of the Louisiana Civil Code defines corporeal possession as "the exercise of physical acts of use, detention, or enjoyment over a thing."
The trial court correctly found that Mr. Witter clearly established his and his family's corporeal possession of the disputed property. The trial court stated the following in its written reasons for judgment:
The evidence in this case clearly shows that plaintiff and his family have corporeally possessed the property since 1906. A member of plaintiff's family, Elvira Garig, purchased the property from Burton Lumber Company on March 5, 1906. Since then, plaintiff's family has paid property taxes on the property, operated a lumber company known as the Baton Rouge Lumber Company, Ltd., and leased portions of the property to, among others, Catfish Town Properties and to Midstream Holding Corporation. Since 1906, plaintiff's family has maintained the property, had the property surveyed, and removed buildings.
The City alleges that Mr. Witter did not possess the batture and claims that the evidence establishes its possession of that portion of the disputed property. However, the trial court's ruling that Mr. Witter possesses the disputed property included a finding that Mr. Witter possesses the batture. This ruling was fully supported by the evidence including evidence that Mr. Witter leased the batture, removed squatters from the levee area facing the batture, generally maintained this area, surveyed the area, and paid taxes on the entire property, including the batture.
The City alleges that Mr. Witter does not possess the batture because Mr. Witter must obtain the Corps of Engineer's permission to use the levee and because the City claims it has cut the grass on Mr. Witter's levee property. The City relies heavily on the testimony of Mr. Addison as establishing its possession of the batture. Mr. Addison admitted on cross-examination that a) the City cut the grass on numerous properties, b) the City, like Mr. Witter, must obtain permission from the Corps of Engineers in order to construct facilities on the batture, and c) the City is required to maintain the levees, regardless of ownership.
The City concedes that Mr. Witter possessed a portion of the disputed property other than the batture. The uncontradicted evidence establishes that Mr. Witter possessed at least part of the disputed property by virtue of a title encompassing all of the disputed property, including the batture.
It is well established that corporeal possession of any part of an immovable by virtue of a title is sufficient to constitute constructive possession of the whole included therein. Louisiana Civil Code Article 3426; Crowell Land & Mineral Corp. v. Neal, 428 So.2d 496 (La.App. 3rd Cir.1983).
The uncontradicted evidence establishes that Mr. Witter corporeally possessed at least a portion of the disputed property as owner under a title translative of ownership. Mr. Witter's corporeal possession of at least part of the disputed property under a title constitutes constructive possession of the whole tract.
Clearly, Mr. Witter had possession of the immovable property at the time the disturbance occurred and he had quiet possession *853 without interruption for more than one year immediately prior to the disturbance.
Mr. Witter proved that his possession of the Witter property was disturbed by actions and public pronouncements of the Mayor and the City Council. This evidence was not seriously disputed.
In September, 1983, the Mayor of Baton Rouge made a public announcement that the City had a claim of ownership to the Witter property. This announcement appeared in the Baton Rouge newspaper and was publicly disseminated. Subsequently, the Metropolitan Council retained an attorney to pursue the claim of ownership against Mr. Witter. Further, in a permit application made to the Corps of Engineers, the City portrayed part of the Witter property as owned by the City. The actions disturbed Mr. Witter's peaceful possession and enjoyment of the Witter property.
Mr. Witter filed suit on August 21, 1984, which was within a year of the alleged disturbance.
The evidence clearly establishes each element of a possessory action and Mr. Witter has carried his burden of proof. Therefore, we must next address the City's defense that the property at issue is a public thing owned by the City, proof of which rests upon the City.
The City claims that the disputed property was dedicated to the public by Beauregard in 1806. To prevail on this defense, the City must establish title in Beauregard, a valid dedication by Beauregard to public use, and actual and continued public use.
Proof of title to the disputed property is a prerequisite to establishing a valid dedication of the property. The City failed to establish this prerequisite. The City contends that the ancient case of City of Baton Rouge v. Bird, 21 La.Ann. at 244 establishes that Beauregard had title to the disputed property. The trial court disagreed, holding that the Witter property was not part of the Plaza de Colomb dedicated by Beauregard to public use.
The Bird case simply does not support the City's contention that Beauregard had title to the Witter property because the Witter property was not at issue there. Rather, in Bird, title in Beauregard apparently was assumed as to the two squares known as Plaza de Colomb and Mexico Square, which squares the trial court found did not include the Witter property.
The Bird decision, which is replete with references to two squares, supports the trial court's conclusions. For example, the Bird court described the issue as follows:
In January, 1867, the plaintiff obtained an injunction to restrain the Sheriff from selling two squares of land situated in the city of Baton Rouge, designated in the pleadings.... The plaintiff ... prays that the city of Baton Rouge may be declared the owner of the two squares....
21 La.Ann. at 244. (Emphasis ours).
As noted by the trial court, the Bird court specifically distinguished the Plaza de Colomb from the adjacent areas, part of which adjacent areas include the Witter property. The court in Bird stated the following:
As has already been stated, Beauregard dedicated certain squares to public use he designated them, in his advertisement, `places publique,' and on the map, `plazas.' There were other sites (emplacements) for public buildings, which he designated in his plan, and which he expressly stated were to revert to him after the lapse of ten years, unless the buildings were erected within that period.
But the squares in question are not included among the sites (emplacements) which were to revert to him, for no buildings of any kind were to be put upon them; on the contrary they were to be open squares,`plazas,' `places publique.'
21 La.Ann. at 247. (Emphasis ours). Bird did not involve the property at issue here and does not establish title to the disputed property in either Beauregard or the City.
The City also argues that two other cases established title in Beauregard or dedication to the City. Neither case confirmed *854 title to the disputed property in Beauregard nor the City. The first case the City relies upon is Heirs of Beauregard v. Burton Lumber Co., No. 870, 17th Judicial District Court, Parish of East Baton Rouge (1885), wherein the court held that Beauregard's heirs could not prove title in Beauregard to a strip of ground west of Square B lying between Square B and the Mississippi River.
The second case the City relies upon is Heirs of Beauregard v. City of Baton Rouge, No. 835, 17th Judicial District Court (1885), wherein the City claimed that the heirs could not prove valid title in Beauregard. The court in Heirs v. City sustained a plea of res judicata based on the Bird decision. Res judicata can go no further than the prior holding on which it is based and the Bird decision quieted title only to Plaza de Colomb and Mexico Square.
In summary, there is no evidence of title in Beauregard from which a valid dedication could have been made. The Bird decision simply quieted title as to the Plaza de Colomb which is not part of the Witter property. The other cases relied upon by the City rejected claims that Beauregard owned property near the Plaza. The trial court correctly decided that the Witter property is not part of the Plaza de Colomb.
The trial court held that the Witter property was a private thing because it encompassed the site for markets and houses which were to revert to Beauregard after the lapse of ten years if public buildings were not erected and, because the property has been privately possessed since prior to 1906 with the City's knowledge and acquiescence. Implicit in the trial court's decision is a finding that the Witter property was not dedicated to public use. We find the trial court's decision is correct as there is no evidence of a binding dedication of the Witter property. Even if the property was so dedicated, the public use was long ago abandoned, rendering the property susceptible to private possession.
If the City had proven a valid dedication, the City would also have to offer proof of public use to effect the alleged dedication. The City offered no evidence of public use of the Witter property. The City initially admitted it had not possessed, controlled, or exercised dominion over the Witter property. The City subsequently conceded that it never erected buildings or public improvements on the Witter property in the period of 1806-16. The City's only witness, Mr. Addison, testified that he knew of no public use of the property, and that he considered the property sub judice as private property.
Further, even if the Beauregard map referred to in the Bird case indicated a potential dedication, the Beauregard plan expressly provided that the areas other than the two squares were to revert to Beauregard if buildings had not been constructed on them within ten years. The Bird court noted the reversionary clause and stated that the sites for public buildings would revert to Beauregard after the lapse of ten years, unless the buildings were erected within that period. 21 La. Ann. at 247.
Implicit in the trial court's reasons was a finding that the areas other than the Plaza de Colomb were to revert to Beauregard after the lapse of ten years if public buildings were not erected. The trial court further found that the Plaza de Colomb did not include the Witter property, suggesting that the Witter property is within the area that was to revert to Beauregard after the lapse of ten years. Since the City admitted that it never erected buildings or public improvements on the Witter property during the ten year period, the Witter property reverted to Beauregard and never was a public thing.
Reversionary clauses have been recognized in our jurisprudence. See Wilkie v. Walmsley, 173 La. 141, 136 So. 296 (1931); Voinche v. Town of Marksville, 124 La. 712, 50 So. 662 (1909). In Voinche, a donation of property was made to the town for a specific purpose. Upon cessation of such use the property was to revert back to the donor. The court upheld the reversionary language.
*855 If the Witter property was dedicated to the City by virtue of Beauregard's plan, upon abandonment of the public use, the property resumed the quality of being susceptible to private ownership, and, therefore, susceptible to private possession. See, e.g., 2 A. Yiannopoulos, Property §§ 33, 71 (2d ed. 1980); Louisiana Highway Commission v. Raxsdale, 12 So.2d 631 (La.App.2d Cir.1943); City of New Orleans v. Salmen Brick & Lumber Co., 135 La. 828, 66 So. 237 (1914). As explained by Yiannopoulos:
When the public owns a thing dedicated to public use, the termination of the public use has distinct consequences. On principle, the thing ceases to be public and becomes a private thing of the state or its political subdivisions. Accordingly, it is alienable and susceptible of acquisitive prescription, though not against the state.
§ 71 at p. 210. (Footnote omitted).
In Raxsdale, the court held that a fractional part of a strip of land that had originally been sold and conveyed to the town of Alexandria had been in the actual and physical possession of defendants as owners for over thirty years and that defendants had acquired the property by prescription. The court reasoned that the property, although acquired by the town, resumed the quality of susceptibility to private ownership when it ceased to be used for public purposes; consequently, the property was a private thing that could be acquired by prescription. 12 So.2d at 634-635.
In Salmen Brick & Lumber Co., property dedicated to the city but never used for a public purpose was held subject to prescription. The court held that the land originally dedicated was not used for the common use of its inhabitants and, therefore, was owned by the City in its private capacity and was prescriptible.
The City failed to establish actual public use of the Witter property. The trial court expressly found that Mr. Witter and his family had possessed and used the disputed property since 1906 with the City's knowledge and acquiescence. Under the circumstances, even if the City owned the property, it is not a public thing, regardless of the character of its acquisition.
In summary, the Witter property is not a public thing. The City not only failed to establish a dedication to public use, but it also offered no evidence that the Witter property ever was dedicated. Neither the cases nor the maps relied upon by the City established that a dedication occurred. The evidence clearly established that the Witter property never actually has been put to public use. Consequently, the Witter property is a private thing. The trial court correctly held the property is private in nature and susceptible of possession by a private party.
The City contends that even if Beauregard did not have valid title to convey, the City, nevertheless, acquired title by virtue of an 1860 Act of Congress quitclaiming title to all of downtown Baton Rouge to the City in trust for those who could confirm their ownership. Act of June 16, 1860, ch. 139, 12 Stat. 43 (1860). Although the trial court did not expressly discuss this defense, its decision that the property is private in nature implicitly rejects the City's defense. The trial court's decision is correct.
The testimony of the City's witness, Mr. Addison, was that the Act of Congress did not purport to vest title in the City, but to renounce claims of the United States. Mr. Addison testified that "all they [United States] relinquish is their claim to it, if you look in the Act of Congress recording that they used in that. They only relinquished their claim to the public land." Further, an examination of the statute itself establishes that it did not intend to convey title to the City of Baton Rouge. Rather, the Act merely quitclaimed property to the City in trust for those who could confirm their ownership.
The Act provides in pertinent part:
[A]ll the right, title, interest or claim of the United States in and to the land occupied by the city of Baton Rouge, in the State of Louisiana, lying between Florida Street on the north and the South *856 Boulevard on the south ... be, and the same is hereby, relinquished to the mayor and council of the city of Baton Rouge, in trust for the several use and benefit of the owners of lots therein....
Indeed, the Act itself provides that it does not affect the interests of third parties to the quitclaimed property. The Act states:
This act ... shall not affect the interest of third parties, nor preclude a judicial investigation in relation to the title to all or any portion of the lands hereby relinquished.
A quitclaim transfers nothing more than the grantor may have. Corkran Oil & Development Co. v. Arnaudet, 111 La. 563, 35 So. 747 (1903), writ dismissed, 199 U.S. 182, 26 S.Ct. 41, 50 L.Ed. 143 (1905). In this case no proof was offered that the United States had title to the Witter property. The intent of the quitclaim was to renounce any claim of the United States that might interfere with the judicial resolution of property disputes between private parties.
More importantly, even if the quitclaim conveyed title, it does not preclude private possession of the property, since there was no public dedication or public use. The City's contention that the quitclaim constitutes a dedication to public use is meritless. There is no basis for the City to claim public ownership by virtue of the quitclaim.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs in the amount of $444.22 are to be paid by appellants.
AFFIRMED.
*857 
NOTES
[1] To enable the reader to better follow our opinion, we have attempted to reproduce, to the best of our ability, maps introduced into evidence at trial. These maps, which are attached to our opinion as Exhibit "A", are taken from exhibit D-5, the Beauregard map, and from exhibit P-1, the official map of Baton Rouge and its suburbs produced in October, 1930.